**Juan FRED and Petra Fred, Plaintiffs,**

v.

**George KOKINOKOS and Jane Kokinokos, Defendants.**

Civ. A. No. 72 C 288.

United States District Court,
E. D. New York.

Aug. 3, 1972.

Alexander A. Kolben, New York City, for plaintiffs.

Fred Zabriskie, New Rochelle, N. Y., for defendants.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1982 and 42 U.S.C. § 3604(b) seeking to recover $2000 compensatory and $2000 punitive damages for an alleged act of racial discrimination arising out of defendants' refusal to lease an apartment in their two-family home on terms demanded by plaintiffs. Jurisdiction is based on 28 U.S.C. § 1343(4) and 42 U.S.C. § 3612. The case was tried upon the facts without a jury. For the reasons given below the plaintiffs' claim for relief is denied and the action is dismissed.

Defendants, George and Jane Kokinokos, are the owners of a two-family dwelling located at 2358 East 24th

Street, Brooklyn, New York. The dwelling consists of nine rooms, three of which, on the first floor, are occupied by defendants as their home. The remaining rooms, on the second floor, form a separate apartment consisting of a living room, dining room, three bedrooms and kitchen. Defendants have owned the house for approximately four years and have rented the upstairs apartment to tenants since November 1967. Mr. Kokinokos testified that none of the prior tenants held possession under a written lease (Tr. 63).[1]

In December 1971 the apartment became vacant and Kokinokos listed it for rent with Exclusive Buys, Inc., a real estate agency. Miss La Grua, an employee of the agency, testified that Kokinokos set rent at $225 per month, the apartment to be available on January 1, 1972. Kokinokos told her he would accept a family with children, ". . . [preferably] older children, possibly no more than maybe one or two. . ." (Tr. 92). Mr. Kokinokos also testified to this limitation at trial (Tr. 63). At no time was anything said concerning a lease, written or otherwise.

Plaintiff Juan Fred testified he went to Exclusive Buys, Inc. on February 3, 1972 and signed a commission agreement obligating him to pay a fee contingent upon the agency securing an apartment suitable for his family. He told the renting agent his family consisted of himself, his wife and two children, ages four and six. He was given the address of the Kokinokos residence and was told the apartment would be leased on a two-year basis. He testified there was no mention that the lease would be written.

Mr. Fred immediately went to the Kokinokos home, was shown the apartment by Mrs. Kokinokos, and said he would return shortly with his wife. This he did. While exhibiting the apartment to the Freds, Mrs. Kokinokos asked Mr. Fred if he spoke any language other than English. He said he spoke Puerto Rican. Mrs. Kokinokos asked him to return the next day to see her husband and he agreed to do so.

Fred returned the following day and spoke to Kokinokos, who indicated in the course of their conversation that he did not want to rent to blacks due to a racial incident which had occurred in the neighborhood. Fred assured him he was Puerto Rican and came from a good "neighborhood, and . . . a good family" (Tr. 9). It is not disputed that Kokinokos then told him he could "have the apartment and move in . . ." (Tr. 9) at any time. Fred also testified Kokinokos agreed to let the apartment for two years but reserved the right to evict him at any time for "not conducting [himself] properly or having overnight affairs" (Tr. 29). Despite the lack of assurance of a written lease, Fred agreed to take the apartment and gave Kokinokos a check for $225. At this time Fred told Kokinokos he had two children (Tr. 44). Finally they agreed that the Freds might paint the apartment prior to moving in.

Fred purchased $74.87 in paint supplies and returned to his newly let apartment on Sunday, February 6. He arrived at 8:30 a. m. and painted alone until 1:00 p. m. He was then joined by his brother who assisted him for the remainder of the day. At seven in the evening Mrs. Kokinokos arrived and complimented Fred on his excellent work. Indeed he testified she suggested she would like to employ him to paint her apartment.

Mrs. Kokinokos now suggested that he paint one child's bedroom blue and the other pink. Fred informed her that since his children were quite young he saw no need for separate bedrooms and was saving one of the rooms for overnight guests. Mrs. Kokinokos questioned him about this and Fred told her a relative would be staying there "as many nights as she wanted to . . ." (Tr. 39). Mrs. Kokinokos then left. Subsequently Fred told the renting

1. References "(Tr.    )" are to pages of the Trial Transcript.

agent, Miss La Grua, that the child was an orphan. He also testified that the child was a cousin who "was very depressed at the time of her mother's death and . . . was put in an orphanage" (Tr. 51).

On Monday Fred returned to finish painting the apartment. Mrs. Kokinokos told him her husband was unwilling to lease the apartment to him if there were to be more than two children staying at the apartment. Fred testified he told her he did not wish to pursue the conversation and left.

Mrs. Kokinokos called Fred the following day. Plaintiff, deeply angered, told her to speak to his lawyer. Kokinokos contacted Fred on Wednesday and offered him the apartment upon the condition that Fred, his wife and two children be the only occupants. Fred declined and Kokinokos returned his deposit.

Plaintiffs now allege that defendants have refused to rent the apartment to them because of plaintiffs' "race and national origin" (Compl., par. 15). The gravamen of their claim is that they were denied the apartment because they are Puerto Rican. As such they believe they have been deprived of " . . . the same right . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real . . . property." 42 U.S.C. § 1982. In addition, they assert they have been discriminated against because of their national origin in violation of the Civil Rights Act of 1968, 42 U.S.C. § 3604(b), which provides:

it shall be unlawful—

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, or national origin.

■ Plaintiffs' claim under § 3604(b) fails because the type of apartment they sought to rent has clearly been exempted by Congress from its prohibition. Section 3603(b) is explicit in declaring that:

Nothing in section 3604 of this title . . . shall apply to—

(2) rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.

■ Assuming, *arguendo*, that plaintiffs' ethnic origin is of a racial character, and thus within the ambit of 42 U. S.C. § 1982, the test in such a case is said to be whether or not " . . . the refusal or failure on the part of the landlord or owner to rent to the plaintiff was motivated by racial considerations, [or] was based solely on account of race. . . ." Bush v. Kaim, 297 F.Supp. 151, 162 (N.D.Ohio 1969). There the court held plaintiff must prove each of the following elements:

(1) that the owner (or responsible party) placed the property on the open market for sale or rental, (2) that the plaintiff was willing to rent or purchase the property on the terms specified by the owner, (3) the plaintiff communicated his willingness to the owner at a time when the property was available for sale or rent, (4) that the owner refused to rent or sell the property to the plaintiff on the terms which the owner indicated would otherwise be satisfactory, and (5) that there is no apparent reason for the refusal of the defendant to rent the property to the plaintiff other than the plaintiff's race. Bush v. Kaim, *supra* at 162.

Here plaintiffs simply have not shown that defendants refused to rent the property on terms which they had indicated would otherwise be satisfactory or that there was no reason for the refusal to rent other than the plaintiffs' "race." The testimony of the renting agent, Miss La Grua, and Mr. Kokinokos clearly establishes that the apartment was available only for a family with a maximum of two children. When the defendants agreed to let they were under the impression that plaintiffs and their two

children would be the only occupants of the apartment. Significantly, that agreement was reached *after* the plaintiffs had revealed they were Puerto Rican.

The controversy and termination of the agreement arose out of defendants' well-grounded fear that a third child would be living in the apartment. This is not a situation which warrants relief under 42 U.S.C. § 1982. "[T]he statute in this case deals only with racial discrimination. . . ." Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

The foregoing sets forth the court's findings of fact and conclusions of law for purposes of Rule 52, F.R.Civ.P.

The Clerk is directed to enter judgment dismissing the complaint.