Ismat U. KHAWAJA, P. O. Box 31, Buffalo, New York 14201, Plaintiff,

v.

George E. WYATT—Individually and as Executive Director, Buffalo Municipal Housing Authority; Richard J. Lehner—Individually and as Counsel, Buffalo Municipal Housing Authority; Albert C. LeCastre—Individually and as Assistant Manager, Buffalo Municipal Housing Authority, Defendants.

Civ.-77-102.

United States District Court,
W. D. New York.

July 29, 1980.

Ismat U. Khawaja, pro se.

Richard J. Lehner, Counsel, Buffalo Municipal Housing Authority, Buffalo, N. Y., for defendants.

CURTIN, Chief Judge.

This action arises out of a landlord-tenant dispute between plaintiff tenant and the Buffalo Municipal Housing Authority [BMHA].

I have twice before issued written orders in this dispute. In my order of July 14, 1977, I dismissed the original complaint and gave plaintiff leave to file an amended complaint which clearly set out his claims. I

said at that time: "The court finds it difficult to specify exactly what the plaintiff's complaint is."

The plaintiff did file a timely amended complaint which was the subject of the second court order on January 13, 1978. At that time, I determined that the complaint set out five claims and that four of them survive defendant's motion to dismiss. I also ordered the parties immediately to begin further discovery under the supervision of the Magistrate, in order to focus the fact issues before the court. The parties have returned and filed extensive affidavits. Based upon the additional information brought out in discovery, defendants now petition for summary judgment.

The test for summary judgment is whether there are any "genuine issues for trial." Rule 56(e). Our Court of Appeals has indicated that this is a strict test. *See generally, Martinez v. Rosado*, 614 F.2d 829 (2d Cir. 1980). The court is not permitted to draw factual inferences in favor of the moving party. In addition, the movant's papers must be carefully scrutinized, while those of the opposing party are on the whole to be "indulgently regarded." 6 Pt. 2 Moore's Federal Practice, ¶ 56.15[7–8]. Applying these standards to the case at bar, I must deny defendants' motion for summary judgment.

Descriptions of the individual claims are set out in my decision of January 13, 1978 and need not be repeated here in detail.

The gravamen of plaintiff's first claim, as best the court can tell, is that defendant LeCastre attempted to harass plaintiff by, among other things, intentionally requiring him to pay his rent by the first of the month, when defendant knew plaintiff would not have received his semi-monthly AFDC check by that date. This was allegedly all part of a plan to evict plaintiff and his family because of their national origin. Defendant does not deny knowledge that plaintiff was a recipient of AFDC benefits or that he commenced eviction proceedings against plaintiff. However, he does deny his actions were intended to harass, or motivated by plaintiff's nationality; his only purpose was to enforce the existing lease agreement.

■ Summary judgment must be denied here because there are material facts in dispute. For example, plaintiff appears to claim that he was singled out for such enforcement action, while defendant contends that there were 28 similar petitions filed against other tenants. Plaintiff's "Answers to Discovery" dated May 29, 1978 at 3. If plaintiff were to prove that he was treated specially, this would be probative of the issues of intentional harassment as well as malice. Of course, it would not necessarily be determinative of either issue.

It is true that the precise basis for the equal protection and malicious prosecution arguments remain somewhat obscure. However, plaintiff does maintain that defendant's actions were due "in part" to plaintiff's "national origin" and that defendant's actions were "unreasonable," "arbitrary," "capricious," and part of a "design" to harass, e. g., Plaintiff's Supplemental Affidavit dated May 16, 1979 at 4; Plaintiff's Affidavit in Support of Denial to Motion to Dismiss Complaint dated February 12, 1979 at 5. While these statements do have a conclusory tone, when combined with plaintiff's specific allegations of verbal threats, albeit by other BMHA officials, failure of BMHA to respond to plaintiff's numerous complaints, and being singled out for the eviction proceeding, they are sufficient to require a trial. *Martinez, supra* at 831.

■ Nor can I say that the defendant is entitled to a qualified immunity. Qualified immunity is available depending on the scope of discretion and the responsibilities of the defendant's office. The test is threefold. The court must weigh (1) the reasonableness of the grounds for the action taken, (2) the good-faith belief of the actor, and (3) whether the action taken was in the course of the actor's official conduct. *Scheuer v. Rhodes*, 416 U.S. 232, 248, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1973). The person putting forward this defense normally has the burden of proof. *Reese v.*

*Nelson,* 598 F.2d 822, 825 (3d Cir. 1979). In the instant case, the reasonableness of defendant's actions and perhaps his good faith are in issue. This is because of plaintiff's claim that the eviction action against him was unique in the history of the BMHA. Defendant's Affidavit dated April 10, 1979 at Appendix B, "Plaintiff's Answers to Interrogatories," at 3.

Plaintiff's second claim is that Mr. Lehner coerced plaintiff to drop his state court action challenging the collection of excess utility charges from tenants who are AFDC recipients by bringing an eviction action, and then offering a lease renewal in exchange for dropping the state court suit. The motion for summary judgment as to this claim must be denied as well. There are material facts in issue. For example, plaintiff denies voluntarily signing a "Stipulation of Settlement and Discontinuance," while defendants insist the contrary. This is a triable issue.

Defendants also contend that plaintiff's claim of discrimination is based on national origin, which they further assert is not covered by 42 U.S.C. § 1981. There are several reasons why I must reject defendants' arguments as to § 1981. First, it is not at all clear that plaintiff's claim is based solely on national origin discrimination. Although it is unclear from his amended complaint, plaintiff's answers to the defendants' interrogatories indicate that he claims he is being discriminated against because

> [d]efendants consider Plaintiff to be inferior to black people as being Muslim and from Pakistan.

Defendants' Affidavit dated April 10, 1979 at Appendix B, "Plaintiff's Answers to Interrogatories," at 6.

■ This statement requires some analysis. As plaintiff also states that he is an American citizen, this is a claim of discrimination on the basis of national origin, rather than alienage. It is also obviously a claim of discrimination based on religion. However, § 1981 does not apply to religious discrimination. *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968 (10th Cir. 1979). The critical words therefore are the ones at the start of the quotation. They make reference to treatment of plaintiff relative to a racial minority. It can be reasonably inferred from this assertion that plaintiff is claiming defendants' treatment of him is racially based. *Manzanares v. Safeway Stores, Inc., supra.*

Second, even if we were to construe plaintiff's claim as based solely on national origin, § 1981 may apply nonetheless. § 1981 is a vintage statute. Act of May 31, 1870, 16 Stat. 144. It gives all persons the same rights

> to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws . . . as is enjoyed by white citizens.

Although the matter has not been decided definitively in this circuit, defendants correctly point out that § 1981 has generally not been held to prohibit discrimination solely on the basis of "national origin," *e. g.,* *Budinsky v. Corning Glass Works,* 425 F.Supp. 786 (W.D.Pa.1974) (Slavic-Americans); *Kurylas v. Dept. of Agriculture,* 373 F.Supp. 1072 (D.D.C.1973) (Polish-Americans); *Avigliano v. Sumitomo Shoji America, Inc.,* 473 F.Supp. 506 (S.D.N.Y.1979) (non-Japanese); *Vera v. Bethlehem Steel Corp.,* 20 FEP Cases 66 (M.D.Pa.1978) (Puerto Rican-Americans). On the other hand, a number of courts have permitted Hispanic individuals to sue under § 1981 upon evidence that there was some racial ("physiological") component to the discrimination. *See Gonzalez v. Stanford Applied Engineering,* 579 F.2d 1298 (9th Cir. 1979) (brown-skinned Mexican-Americans); *Enriguez v. Honeywell, Inc.,* 431 F.Supp. 901 (W.D.Okla.1977) (Americans of Spanish descent). In at least one case it was deemed adequate that plaintiff compare himself to another racial group. *Manzanares v. Safeway Stores, Inc., supra* (Mexican-Americans, in contrast to "Anglos").

■ In our case, plaintiff does at one point appear to concede that his claim is not based on race discrimination. Plaintiff's Supplemental Affidavit dated May 16, 1979 at 10. However, the affidavits and the answers to the interrogatories make fre-

quent references to plaintiff's race, his neighbors' race, and the race of those against whom plaintiff filed complaints. Indeed, the claim that plaintiff is considered "inferior to black people" by defendants fits rather well within the "white citizens" language of the statute itself. To paraphrase the words of a court faced with a similar problem, "[Pakistani] Americans claiming that they have been discriminated against in violation of § 1981 are entitled to introduce evidence to prove that the alleged discrimination was racial in character." *Cubas v. Rapid American Corp., Inc.*, 420 F.Supp. 663, 665 (E.D.Pa.1976) (Cuban-Americans). *Accord, Enriguez v. Honeywell, Inc., supra* at 904; *Apodaca v. General Electric Co.*, 445 F.Supp. 821, 824 (D.N.M. 1978) (Spanish-surnamed Americans). On this record, I cannot say, as a matter of law, that the alleged discrimination against plaintiff does not contain elements of racial discrimination.[1]

There is yet another reason why I must reject defendants' motion for summary judgment on the second claim. Even if § 1981 does not constitute a sufficient basis for his claim, it appears plaintiff may well have stated a claim under 42 U.S.C. §§ 3604, 3612.

■ The third claim states that Mr. LeCastre and BMHA officials purposely rented the apartment above the plaintiff to tenants who created a noise nuisance in order to harass him and his family into leaving the premises. Despite numerous complaints, no action was taken. Whether the motivation for the alleged harassment was racial discrimination is not clearly set out in the amended complaint. However, plaintiff asserts that no action was taken on his complaints against his neighbors because they were black, and consequently given preference by the BMHA. Plaintiff's "Supplemental Affidavit" dated May 16, 1979 at 11. While it is true that the Constitution does not contain a guarantee of access to dwellings of a particular quality, *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972), it is not true that a person may be denied, on the basis of race certain "conditions," "services," or "facilities" in connection with renting a dwelling. 42 U.S.C. § 3604(b). The key fact issue here is whether defendants' actions were racially motivated. The problem is similar to the one in the first claim. The same statements are in issue. As noted earlier, plaintiff's statements have a conclusory tone. Nonetheless, when combined with the myriad of specific factual allegations in the affidavits and answers to interrogatories, they are sufficient to require trial.

The final claim is also similar to the first claim. Here plaintiff asserts that he was

---

1. Numerous courts have questioned the jurisprudential wisdom of distinguishing between discrimination on the basis of race and on the basis of national origin. Judge Newcomer has noted that judicial decisions

> offer little guidance about the methods for proving that a group has common racial characteristics. . . . We are not aware of an authoritative and judicially manageable method for distinguishing between national origin discrimination and racial discrimination when both may be present at the same time.

*Cubas v. Rapid American Corp., Inc., supra* at n.2. Judge Eubanks has expressed similar reservations about distinguishing between these two kinds of discrimination when the line between them may be so thin as to be "indiscernible; indeed, to state the matter more succinctly, there may in some instances be overlap." *Enriguez v. Honeywell, Inc., supra* at 904. As courts "strain to fit their grievances into the mold of racial discrimination" in those situations where other statutes do not offer an adequate remedy, the courts may be forced into the business of attempting to identify the racial characteristics of given nationalities. This is precisely the kind of stereotyping which the civil rights statutes were designed to prevent. A preferred alternative used by some courts looks to the perceptions of the discriminators in order to determine the kind of discrimination at work. *Budinsky v. Corning Glass Works, supra* ; *Apodaca v. General Electric Co., supra.* But it has been pointed out that discriminators may be "poor anthropologists," *Manzanares v. Safeway Stores, Inc., supra* at 971, and so presumably this approach has its limits as well. On the question of the relationship between racial and national origin categorizations, *see generally*, J. R. Baker, RACE (1974); M. Banton, The Idea of Race (1977); A. Montagu, ed., Statement on Race (3d ed. 1972); F. M. Snowden, Jr., Blacks in Antiquity (4th ed. 1975).

billed for plumbing repairs actually performed on a neighboring apartment, refused to pay, and subsequently became the object of another eviction proceeding. Once again, the action was discontinued. Plaintiff appears to claim that the eviction action constitutes a malicious prosecution brought because plaintiff is a Pakistani-American. Plaintiff's Supplemental Affidavit dated May 16, 1979 at 10. Here again plaintiff has alleged a series of incidents which could give rise to an inference of intentional' discrimination. He should be allowed to have his day in court.

The motion for summary judgment is denied.

So ordered.