## Amrit BARUAH

v.

## Ruth H. YOUNG, et al.

## Civ. A. No. M–81–1346.

United States District Court,
D. Maryland.

March 24, 1982.

---

Glen Fallin, Upper Marlboro, Md., and
Harold Buchman, Baltimore, Md., for plaintiff.

Stephen H. Sachs, Atty. Gen. of Md.,
James J. Mingle, Asst. Atty. Gen., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Amrit Baruah, brought this action to redress alleged violations of his civil rights against the following defendants: The Board of Regents of the University of Maryland (University); John S. Toll, President of the University; and Ruth H. Young, Dean of the University's School of Social Work and Community Planning (SSW&CP). Defendants Toll and Young are sued in both their individual and official capacities.[1] The plaintiff has requested damages, and injunctive as well as declaratory relief.

The defendants have moved to dismiss[2] the plaintiff's amended complaint,[3] and the plaintiff has filed an opposition to that motion.[4] Having considered the parties' memoranda, the court concludes that no hearing is necessary. Local Rule 6(E).

### I. Overview[5]

In August of 1972, the plaintiff was appointed to a full-time teaching position, with a rank of assistant professor, at the University's SSW&CP. This position was funded from federal and other grant monies.

During the period 1972 through 1976, Dr. Daniel Thursz, then Dean of the SSW&CP, encouraged the plaintiff to obtain a doctoral degree. According to the plaintiff, it was the University's policy to transfer full-time teachers whose positions were funded by grants to tenure-track state funded positions upon their receipt of a doctoral degree.

The plaintiff received his doctoral degree in July of 1976. He alleges that Dr. Thursz assured him that he would receive a state funded, tenure track position within a "reasonable period of time subsequent there-

to."[6] When Dr. Thursz left the SSW&CP in January of 1977, the plaintiff had not been appointed to a tenure track position.

Defendant Young succeeded Dr. Thursz as Dean of the SSW&CP in January of 1977. According to the plaintiff, Young had been a faculty member of the SSW&CP prior to becoming Dean and had exercised administrative functions within the SSW&CP. In addition, the plaintiff alleges that Young "knew that the practice of the SSW&CP . . . was that whenever full-time teachers at the SSW&CP earned doctoral degrees while assigned to a grant-funded position, they were rewarded by transfer to more secure, State-funded positions."[7]

Young notified the plaintiff on June 22, 1978 that his employment with the SSW&CP would be terminated as of December 31, 1978. According to the plaintiff, the sole reason given by Young for this decision was the school's declining enrollment.

On October 25, 1978, Young notified the plaintiff that his employment with the SSW&CP would be extended until June 30, 1979. Young stated in the notification that the plaintiff would be paid during the period January 1 through June 30, 1979, from funds other than those provided under the "Title XX grant," which had been the source of funding for the plaintiff's position until December 31, 1978. According to the plaintiff, he believed, and was aware of no objective facts to support a contrary belief, that his employment was being terminated solely due to an expected decline in enrollment.

On May 14, 1979, the plaintiff, a citizen of India, requested that Young reconsider the decision to terminate his employment. The plaintiff made this request because he

1. See note 14 *infra.*

2. Paper No. 13.

3. Paper No. 11.

4. Paper No. 14.

5. Since the defendants' motion is properly treated under Rule 12(b)(6), Fed.R.Civ.P., the court has accepted as true all of the factual

allegations in the plaintiff's complaint. *See, e.g., Chertkof v. Mayor & City Council,* 497 F.Supp. 1252, 1258 (D.Md.1980).

6. Paper No. 11 at ⸢ 7.

7. Paper No. 11 at ⸢ 8.

had learned that Young was interviewing candidates, including white American natives, for a faculty position at the SSW&CP and that the new appointee would teach the courses that were taught by the plaintiff. According to the plaintiff, Young's decision to interview candidates indicated to him that the reason for his termination, an expected decline in enrollment, "no longer obtained."

On May 15, 1979, Young responded, in writing, to the plaintiff's request for reconsideration. Her letter stated that the plaintiff's employment could not be extended due to the projected decline in enrollment.

A member of the SSW&CP's full-time faculty retired in June of 1979. According to the plaintiff, although he was qualified for the position another person was appointed from outside of the University. The person appointed was younger than forty and did not have a doctoral degree. This position was funded by State funds.

In the Fall of 1979, a white American national, who was younger than the plaintiff, was appointed from outside of the University to teach the course formerly taught by the plaintiff. This position was funded by state rather than grant funds.

According to the plaintiff, the funds received by the SSW&CP under "Title XX" did not decrease significantly in either 1979 or 1980. Thus, the plaintiff claims that his termination was not occasioned by economic necessity. In addition, the plaintiff alleges that the projected decline in enrollment, purportedly relied on by Young as the basis for terminating his employment, was not actually so projected but rather was used as a pretext for his termination and denial of a transfer to a position funded by the State.

The plaintiff filed an administrative charge with the Equal Employment Opportunity Commission (EEOC) on November 21, 1979, alleging that he had been discriminated against on account of national origin and age. The EEOC deferred this charge to the Maryland Commission on Human Rights (MCHR), which declined to investigate the plaintiff's allegations. The EEOC then assumed jurisdiction and conducted an investigation. According to the plaintiff, a representative of the University stated during an administrative proceeding that the plaintiff's competence had not been questioned and was not a factor in his termination.

The EEOC issued its decision on the plaintiff's Title VII claim on February 19, 1981, finding that there was reasonable cause to believe that the plaintiff had been discriminated against on the basis of national origin. This action was instituted on May 28, 1981, and the plaintiff filed an amended complaint on December 4, 1981.[8]

## II. *Discussion*

The defendants have moved to dismiss the plaintiff's amended complaint on grounds cognizable under Rule 12(b)(6), Fed.R.Civ.P. Both sides have advanced numerous arguments for or against the dismissal of the plaintiff's various claims. As will be seen below, the court is presently unable to resolve definitively all of the issues raised by the parties due to the state of the record and the procedural posture of the case.

### A. *Title VII and the ADEA*

The defendants' first contention, that the plaintiff's claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* are time-barred, is predicated on two assumptions. The first assumption is that the plaintiff's claims accrued on October 25, 1978, the date on which Young last extended the plaintiff's employment. The second assumption is that the plaintiff was required to file an administrative charge within 180 days of that date in order to preserve his right to sue in federal court.

■ The defendants correctly note that under *Delaware State College v. Ricks*, 449 U.S. 250, 256–62, 101 S.Ct. 498, 503–06, 66

---

8. The complaint alleges that the EEOC issued to the plaintiff a notice of his right to sue under Title VII on September 10, 1981.

L.Ed.2d 431 (1981), the plaintiff's discriminatory termination claims accrued initially on October 25, 1978, the date on which Young last extended the term of his employment with the SSW&CP. *Accord, Chardon v. Fernandez*, —— U.S. ——, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Thus, without more, the period in which the plaintiff was required to file his administrative charge began to run on that date.

■ Nevertheless, as this court noted in *Algea v. Schweiker*, 529 F.Supp. 163, 165–66, (D.Md.1981), the time-to-file and other procedural requirements of Title VII and the ADEA do not implicate the court's subject matter jurisdiction. Rather, they are in the nature of statutes of limitations and are subject to tolling on equitable grounds. *See, e.g., Zipes v. Trans World Airlines, Inc.*, —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Citicorp Person-to-Person Financial Corp. v. Brazell*, 658 F.2d 232, 234 (4th Cir. 1981); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 587–94 (5th Cir. 1981) (en banc).

■ The plaintiff has alleged in his amended complaint facts which, if proven, might entitle him to the benefit of equitable tolling. According to the plaintiff, the only reason ever advanced directly by Young for his termination was the University's projected decline in enrollment. It was not until May or June of 1979, that the plaintiff claims he had at least some reason to believe that his termination was for reasons other than economic ones. During this time Young was interviewing persons for positions the plaintiff alleges he was qualified to fill. Moreover, it was not until the Fall of 1979 that someone was hired from outside of the University to teach the courses formerly taught by the plaintiff. Consequently, when the complaint is viewed under the standards applicable to a motion under Rule 12(b)(6), it sufficiently alleges that the plaintiff may have been misled purposely by Young as to the reasons for his termination. *Wilkerson v. Seigfried Insurance Agency, Inc.*, 621 F.2d 1042, 1045 (10th Cir. 1980). *See Tucker v. United Parcel Service*, 657 F.2d 724, 726–27 (5th Cir.

1981). Whether the application of equitable tolling is warranted in this case cannot be resolved at this juncture. In most cases such a determination cannot be made until a trial on the merits or at least the establishment of the non-existence of material fact issues. *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d at 595. Accordingly, the court cannot now say that the period in which the plaintiff was required to file an administrative charge, in order to preserve his rights under Title VII and the ADEA, commenced to run on October 25, 1978.

■ The defendants next contend that in order to benefit from Title VII's 300-day limitations period, a claimant in a deferral state must file a charge with a state agency that is timely under state law. *See* 42 U.S.C. § 2000e–5(e).

In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Court noted that a claimant in a deferral state was not required to file a state charge within the 180-day period for filing with the EEOC in order to benefit from the 300-day limitations period. 447 U.S. at 814 n.16 & 816 n.19, 100 S.Ct. at 2490 n.16 & 2491 n.19. In so doing, the Court rejected the reasoning of cases such as *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975) (en banc), in favor of that set out in *Moore v. Sunbeam Corp.*, 459 F.2d 811 (7th Cir. 1972). *Accord, Doski v. M. Goldseker Co.*, 539 F.2d 1326 (4th Cir. 1976). The Court did not, however, address the precise question at issue here for the charge in *Mohasco* was timely filed under state law. 447 U.S. at 810 n.4, 100 S.Ct. at 2489 n.4. *See Delaware State College v. Ricks*, 449 U.S. at 260 n.13, 101 S.Ct. at 505 n.13; *id.* at 263 n.2, 101 S.Ct. 501 n.2 (Stewart, J., dissenting).

Prior to *Mohasco*, the lower federal courts were divided as to whether the timely filing of a charge under state law was a necessary condition for the application of the 300-day EEOC filing period. *Compare DuBois v. Packard Bell Corp.*, 470 F.2d 973, 974–75 (10th Cir. 1972) *and Mobley v. Acme Markets, Inc.*, 473 F.Supp. 851, 856–57 (D.Md.1979) *with EEOC v. Delaware Trust*

*Co.*, 416 F.Supp. 1040, 1043–44 (D.Del.1976) and *Ortega v. Construction & General Laborers' Union No. 390*, 396 F.Supp. 976, 981–82 (D.Conn.1975). *See also White v. Dallas Independent School District*, 581 F.2d 556, 562 (5th Cir. 1978) (en banc); *Davis v. Valley Distributing Co.*, 522 F.2d 827, 832–33 (9th Cir. 1975).

This division of authority has continued in post-*Mohasco* decisions. *Compare Lowell v. Glidden-Durkee*, 529 F.Supp. 17, 21–26 (N.D.Ill.1981) *and Battle v. Clarke Equipment*, 524 F.Supp. 683, 686–88 (N.D.Ind. 1981), *and Gunn v. Dow Chemical Co.*, 522 F.Supp. 1172, 1176–78 (S.D.Ind.1981) *with Owens v. Ramsey Corp.*, 656 F.2d 340, 342–43 (8th Cir. 1981) *and Morrison v. United Parcel Service*, 515 F.Supp. 1317, 1318–20 (W.D.Okla.1981). *See also Wiltshire v. Standard Oil Co.*, 652 F.2d 837, 839–40 & n.1 (9th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982). The EEOC has taken the position that timely filing under state law is not required before the claimant can benefit from the 300-day federal filing period. 29 C.F.R. § 1601.-13(a)(3) (1981).

This court need not presently rule on this question in order for the plaintiff's Title VII claims to survive a motion to dismiss. As noted earlier, before it can be determined whether the plaintiff's administrative filing was timely the court must decide when, for Title VII purposes, the plaintiff's claims accrued.

Although neither side has submitted copies of the relevant administrative documents, the complaint alleges that the plaintiff filed his administrative charge on November 21, 1979, and that the EEOC then referred the charge to the MCHR. Such a procedure is permissible under section 706 of Title VII, 42 U.S.C. § 2000e–5. *See, e.g., Love v. Pullman Co.*, 404 U.S. 522, 525–26, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972); *Hall v. Board of County Commissioners*, 509 F.Supp. 841, 844–46 (D.Md.1981). This also satisfies the deferral requirement of section 14 of the ADEA, 29 U.S.C. § 633.[9] *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 759–64, 99 S.Ct. 2066, 2073–75, 60 L.Ed.2d 609 (1979). Accordingly, the defendants' motion to dismiss the plaintiff's Title VII and ADEA claims on grounds of limitations will be denied.[10]

■ The defendants next contend that the plaintiff cannot maintain a Title VII race discrimination claim in this court because the discriminatory *animus* identified in his administrative charge was national origin, not race.

As the court has already noted, neither party has submitted the relevant administrative documents. Consequently, the court cannot either construe the administrative charge itself or determine the scope of the EEOC's investigation. *See, e.g., Chisholm v. United States Postal Service*, 665 F.2d 482, 491 (4th Cir. 1981); *Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184, 1187–93 (D.Md.1977). Nevertheless, it is apparent that the same series of events undergird the plaintiff's claim of national origin as well as race discrimination. Further, assuming the truth of the allegations in the amended complaint, it appears that these historical events were considered by the EEOC during its investigation. Because the plaintiff's characteristics, non-white and a native of India,[11] may entitle him to recover upon proof of discrimination on either basis[12] the

---

9. Under section 7(d)(2) of the ADEA, 29 U.S.C. § 626(d)(2), a claimant in a deferral state has 300 days to file an administrative charge with the EEOC. *See, e.g., Aronsen v. Crown Zellerbach*, 662 F.2d 584, 586–91 (9th Cir. 1981); *Ciccone v. Textron, Inc.*, 651 F.2d 1, 1–2 (1st Cir.), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131–32 (2d Cir. 1981); *Davis v. Calgon Corp.*, 627 F.2d 674, 676–77 (3d Cir. 1980).

10. In light of this ruling, the court will defer consideration of the plaintiff's contentions regarding the applicability of the so-called "continuing violation" theory. *See, e.g., Kim v. Coppin State College*, 662 F.2d 1055, 1061 (4th Cir. 1981).

11. Paper No. 11 at ¶ 3.

12. *See, e.g., Gonzalez v. Stanford Applied Engineering, Inc.*, 597 F.2d 1298, 1300 (9th Cir. 1979); *Khawaja v. Wyatt*, 494 F.Supp. 302, 303–05 (W.D.N.Y.1980); *Lopez v. Sears, Roe-*

defendants' motion to dismiss the Title VII race discrimination · claim will be denied.

B. *Section 1981 and Section 1983*

█ The defendants first contend that in enacting Title VII and the ADEA Congress displaced any remedies for employment-related discrimination that otherwise existed under section 1981 and section 1983. In support of this theory, the defendants rely on Justice Stewart's opinion in *Great American Federal Savings & Loan Ass'n., v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), and recent cases discussing the limitations of section 1983 as a vehicle for enforcing rights purportedly derived from federal statutes. *See, e.g., Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Hymes v. Harnett,* 664 F.2d 410, 412–13 (4th Cir. 1981); *H. R. v. Hornbeck,* 524 F.Supp. 215, 222–23 (D.Md.1981). *See also Maine v. Thiboutot,* 448 U.S. 1, 22 n.11, 100 S.Ct. 2502, 2507 n.11, 65 L.Ed.2d 555 (1980) (Powell, J., dissenting); *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 673 n.2, 99 S.Ct. 1905, 1909 n.2, 60 L.Ed.2d 508 (1979) (Stewart, J., dissenting).

The Supreme Court expressly rejected the defendants' displacement or implied repeal theory as to section 1981 almost seven years ago in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–61, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). The defendants' theory as to section 1983 is also without merit.

The cases relied on by the defendants establish only that section 1983 may not serve as a vehicle for the enforcement of a *federal statute* in two specific situations. The first is when the federal statute relied on does not create rights that are enforceable by the putative plaintiff. *E.g., Pennhurst State School and Hospital v. Halderman,* 451 U.S. at 27–30, 101 S.Ct. at 1545–46, 67 L.Ed.2d at 714–15. The second is when the federal statute creating the rights contains its own comprehensive enforcement scheme. *E.g., Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. at 19–21, 101 S.Ct. at 2625–27, 69 L.Ed.2d at 450–51. *Cf. Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. at 375–78, 99 S.Ct. at 2350–52 (rights granted by Title VII are not enforceable through section 1985(3)).

In this case, the source of the rights claimed by the plaintiff to be protected through section 1983 is not a federal statute. Rather, the plaintiff is claiming that the defendants' actions have violated rights secured by the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[13] *Cf. Hall v. Board of County Commissioners,* 509 F.Supp. 841, 848 (D.Md. 1981) (plaintiff may pursue Title VII claims, and First Amendment claims through section 1983, in the same lawsuit). Accordingly, the defendants' dismissal motion, insofar as it is premised on a displacement or implied repeal theory, will be denied.

█ The defendants next contend[14] that the plaintiff's race and national origin claims under section 1983 and section 1981 are time-barred because they were not contained in the original complaint. The period of limitations applicable to these claims is three years. *Evans v. Chesapeake & Potomac Tel. Co.,* 535 F.Supp. 499 (D.Md. 1982) (§ 1981); *Davidson v. Koerber,* 454 F.Supp. 1256, 1258–61 (D.Md.1978) (§ 1983). *See International Woodworkers of America v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1271 (4th Cir. 1981). *But see McGill v.*

---

buck & Co., 493 F.Supp. 801, 807 (D.Md.1980). *Compare Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 970–71 (10th Cir. 1979).

**13.** Paper No. 11 at ¶¶ 31 and 32.

**14.** The court need not address the defendants' contentions regarding the Eleventh Amend-

ment as the plaintiff states in his most recent memorandum, Paper No. 13 at 1, that he is *not* seeking damages from the Board of Regents or the individual defendants in their official capacities. *See Laskaris v. Thornburgh,* 661 F.2d 23, 25–26 (3d Cir. 1981).

*General Electric Co.*, 524 F.Supp. 1126, 1128–29 (D.Md.1981). The plaintiff's race and national origin discrimination claims are not time-barred because they relate back to the filing of the original complaint.

Under Rule 15(c), Fed.R.Civ.P., an amendment relates back whenever the claim asserted "in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In his amended complaint, the plaintiff has simply added additional theories of recovery. He has not purported to state claims based on events different from or in addition to those set out in the original complaint. Consequently, the amended complaint relates back under Rule 15(c). *See, e.g., Davis v. Piper Aircraft Co.*, 615 F.2d 606, 614 (4th Cir. 1980); 3 *Moore's Federal Practice* ¶ 15.15[3] (2d ed. 1980); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1497 (1971).

The defendants assert that the plaintiff's amended complaint does not state a cognizable claim for the deprivation of procedural due process. According to the defendants, the plaintiff has failed to identify a property or liberty interest protected by the Fourteenth Amendment.

 To be entitled to procedural due process, a person must have a property or liberty interest warranting protection by the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). A property interest for due process purposes exists when a person has a legitimate claim of entitlement to a right derived from sources such as state statutes, local ordinances, and public employment contracts. *See, e.g., Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sinderman*, 408 U.S. 593, 601–02 & n.7, 92 S.Ct. 2694, 2699–700 n.7, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. In the case of state and local employees, there is no property

interest protectable by the Due Process Clause when such an employee has no specific interest in continued employment and is, essentially, terminable at will. *See, e.g., Ogilbee v. Western District Guidance Center, Inc.*, 658 F.2d 257, 259–60 (4th Cir. 1981); *Wooten v. Clifton Forge School Board*, 655 F.2d 552, 554–55 (4th Cir. 1981); *Bunting v. City of Columbia*, 639 F.2d 1090, 1093–94 (4th Cir. 1981).

 In this case it does not appear that the plaintiff has any property interest in continued employment based on any state statute or written employment contract. Nevertheless, the amended complaint alleges the existence of certain policies, practices, and understandings [15] which may rise to the level of a property interest. *Perry v. Sinderman*, 408 U.S. at 599–603, 92 S.Ct. at 2698–2700. Thus, while the plaintiff may ultimately not prevail on this claim, *see Kilcoyne v. Morgan*, 664 F.2d 940 (4th Cir. 1981); *Clark v. Whiting*, 607 F.2d 634 (4th Cir. 1979),[16] the court cannot say that the plaintiff will be unable to prove facts entitling him to relief. *Chertkof v. Mayor & City Council*, 497 F.Supp. at 1258. Accordingly, the defendants' motion to dismiss this claim will be denied.

 The plaintiff's alleged deprivation of a liberty interest, however, stands on a different footing. As an untenured professor, the mere termination of his employment was not so stigmatizing as to constitute a deprivation of liberty. *E.g., Bishop v. Wood*, 426 U.S. at 348, 96 S.Ct. at 2079; *Board of Regents v. Roth*, 408 U.S. at 574–75 & n.13, 92 S.Ct. at 2707–08 & n.13. The plaintiff has not alleged that false charges were leveled against him and that there has been, or will be, a public disclosure of such charges. *E.g., Codd v. Velger*, 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977); *Leford v. Delancey*, 612 F.2d 883, 886–87 (4th Cir. 1980). To the contrary, the plaintiff contends that his competence was

---

**15.** Paper No. 11 at ¶¶ 6, 7, 8, 24 and 26.

**16.** *See also Harrison v. Ayers*, 673 F.2d 724 (4th Cir. 1982); *Mayberry v. Dees*, 663 F.2d 502 (4th Cir. 1981).

never an issue.[17] In short, the plaintiff has not stated a cognizable claim for the deprivation of a liberty interest.

The defendants' final contention is that the amended complaint does not state a claim as to defendant Toll under section 1983. The court disagrees. As a matter of state law, Toll had the power to intervene and determine whether the plaintiff's employment with the SSW&CP should be continued. *See Md.Educ.Code Ann.* § 13–1A–02(a) (1981 Cum.Supp.). The amended complaint alleges specifically that Toll had actual knowledge of the circumstances of the plaintiff's dismissal.[18] Thus, the plaintiff may be able to show that Toll was personally involved in the decision not to continue his employment or should have exercised his supervisory authority when he learned of the circumstances surrounding the plaintiff's dismissal. *See Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980). The court need not address at this juncture whether Toll would be entitled to qualified immunity should his culpability be established initially.

For the reasons set out above, it is this 24th day of March, 1982, by the United States District Court for the District of Maryland, ORDERED:

1. The defendants' motion to dismiss the plaintiff's amended complaint, insofar as it alleges a deprivation of procedural due process in connection with a liberty interest is GRANTED.

2. The defendants' motion to dismiss the plaintiff's amended complaint is DENIED in all other respects.

---

**17.** Paper No. 11, at ¶¶ 17 and 20.

**18.** Paper No. 11, at ¶ 23.