## CONWAY PLAZA PARTNERS, LTD. v SALDANA

Case No. CI85-8112

County Court, Orange County

July 30, 1985

### APPEARANCES OF COUNSEL

**Paul Linder** for plaintiff.

**Rafael de Armas** for defendant.

### OPINION OF THE COURT

JAMES C. HAUSER, County Judge.

This cause came before this court as a non-jury trial. The plaintiff, who is the owner of a shopping center, is attempting to evict the defendant because the latter's lease has expired. The defendant has raised the affirmative defense that the eviction is impermissible because

it is based on race/or national origin.[1] (The defendant was born in Peru but is now an American citizen).

## AGREED UPON FACTS

Plaintiff purchased Conway Plaza Shopping Plaza from Orlando Investments of Florida, Inc. Orlando Investment had a lease with defendant which frm March 1, 1984 to March 1, 1985 required him to pay $850.00 per month rent. Joint Exhibit 1. In October, 1984 the defendant told Cindy Lingo, an agent for plaintiff that he was interested in purchasing property adjacent to the Conway Shopping Plaza. As agreed to in the deposition, Mr. Saldana has difficulty speaking and understanding English.

On January 8, 1985 the plaintiff sent a letter to defendant that she would not be renewing his lease (plaintiff's exhibit 2).

Prior to the January 21st letter, defendant did in fact purchase the property next to Conway Plaza. However, he was unable to build anything because of the difficulty in obtaining sewer and water hook-ups and correcting an easement. Sometime after January 20, 1985, the defendant erected a sign on the new property entitled "Future Home of Conway Shopping Plaza".

On January 29th plaintiff wrote defendant she had entered into a lease with a new tenant, Charles Levering, to rent the defendant's premises. (plaintiff's exhibit 11). In fact, the lease was not signed until February 6, 1986 (plaintiff's exhibit 4). It is uncontradicted that the plaintiff does not know Mr. Levering's race or nationality. The terms of Mr. Levering's lease were:

$16,000 per year 1985-1988

$17,600 per year 1988-1991

$19,200 per year 1991-1995

(page 9 of plaintiff's exhibit 4).

According to the lease, Mr. Levering would install a new dry cleaning plant prior to January 1, 1986, completely remodel the interior of the store within 30 days of occupancy and install a new bronzetone metal and glass front. (plaintiff's exhibit 4 page 14).

The plaintiff never offered the defendant a new written lease. In the

---

[1] The defendant has also raised the defenses that the plaintiff has failed to comply with the fictitious name statute or properly register with the Secretary of State as a limited partnership. Although these defenses were raised at trial, there was no affirmative proof that plaintiff had failed to comply with either statute. Therefore, both affirmative defenses must fail.

98

letter dated January 29th (plaintiff's exhibit 11) she claimed he could have rented the premises for $10.00 a square foot the first year, $11.00 a square foot the second year and $12.00 a square foot the third year. The letter required the defendant to install a new dry cleaning establishment and remodel the premises. The interior of defendant's dry cleaning establishment is approximately 1600 square feet. Hence, Mr. Saldana would have paid:

1st year—$16,000 per year

2nd year—$17,600 per year

3rd year—$19,200 per year.

## FINDINGS OF FACT IN DISPUTE

1) Based on the court's observation of Mr. Saldana, he is not only Hispanic, he is black.

2) Had the plaintiff offered the defendant a lease to rent the premises he would not have agreed because he was unwilling to purchase new equipment for the dry cleaning establishment. He was however, willing to refurbish the interior and put up a new front to the store.

3) The defendant's equipment was 2-8 years old, but was in excellent working order and complied with all federal and state regulations.

4) The defendant asked Ms. Lingo if he could use the Conway Shopping Plaza parking lot for his new building, but she refused to permit it.

5) The defendant intended to use the new building for a shirt laundry and not for his dry cleaning establishment.

6) Ms. Lingo was justified in believing that Mr. Saldana was moving his entire establishment (dry cleaning and shirt laundry) to his new location because:

a. Mr. Saldana's English is poor and it is reasonable to believe she understood him to say he was vacating Conway Plaza entirely.

b. The defendant posted a sign on the property stating "new home of Conway Shopping Plaza" in January, 1985 prior to the lease being signed by Mr. Levering.

7) The plaintiff is intending to upgrade the condition of the shopping plaza. As a result, the plaintiff has also evicted a coin laundry and a hair dresser.

8) The credibility of both Ms. Cindy Lingo and Jorge Saldana has been put into question. Based on the testimony of Dr. Haylock, this court rules that Ms. Lingo's reputation for telling the truth is question-

**99**

able. This court rules that because Mr. Saldana's testimony at deposition conflicted with his testimony at trial, his credibility is also questionable.

## STATEMENT OF LAW

If the defendant is being evicted because of his race, this is a violation of 42 USC 1982. *Jones v. Mayer*, 392 US 409, 88 S. Ct. 2186, 20 L. Ed 2d 1189 (1968). Since this court has ruled that defendant is black it need not decide whether 42 USC 1982 is applicable to a person based on national origin.[2] Since 42 USC 1982 is the only applicable statute, the tenant must prove not only discriminatory effect, but discriminatory intent on the part of Ms. Lingo. *General Building Contractors Assn., Inc. v. Pennsylvania*, 458 US 375, 102 S. Ct. 3141, 73 L. Ed 2d 835 (1981) holding that a party must prove discriminatory intent when enforcing 42 USC 1982); but see *Smith v. Anchor Bldg. Corp.*, 535 F.2d 324 (7th Cir. 1974).

In order to prove discriminatory intent, the defendant must satisfy a four-part test:[3]

1) The defendant is a protected class,

2) The defendant attempted to rent building space on terms acceptable to the landlord,

3) The defendant was discouraged or rejected from renting the space and a significant reason he was rejected was because of his race. *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977).

4) The building space remained available for rental after defendant was rejected.

Since defendant is black, he is a protected class. However, this court rules the defendant failed to satisfy the second prong of the test, since based on the evidence, he was unwilling to rent the premises on the same terms and conditions as required by the landlord. Although the defendant was willing to pay an increased rent, he was unwilling to remodel his store. This court further finds the plaintiff had a legitimate, non-racial reason for rejecting the tenant when she offered his space to a Mr. Levering. Applying a "reasonable man test", Ms. Lingo was

---

[2] It is unclear whether 42 USC 1982 applies to suits based on national origin. Compare *Fred v. Kokinokos*, 347 F. Supp 942 (ED N.Y. 1972), (42 USC 1982 does not include national origin) with *Khawaja v. Wyatt* 494 F. Supp. 302 (W.D. N.Y. 1980). (42 USC 1982 does include national origin.)

[3] *Marable v. Walker*, 644 F. 2d 390 (5th Cir. 1981).

justified in believing that Mr. Saldana was vacating his dry cleaning establishment and that is why his lease was not renewed.[4]

Based on the evidence before this court, Ms. Lingo attempted to upgrade the shopping plaza by creating a "new image." The *effect* of this approach may very well have resulted in discrimination based on race against Mr. Saldana. However, the court is unable to find any *intent* on Ms. Lingo's part to discriminate against Mr. Saldana. She refused to renew the lease of Ms. Cooper (a white female) and Henry Rajgor because they could not afford the increase in rent. Ms. Lingo may be a hard-nose landlord, but that does not constitute discrimination based on race.

Since the court rules that the defendant has not prevailed on his discrimination claim, the court rules the plaintiff is entitled to possession of the premises.

The plaintiff has asked for double rent because defendant held over after the lease expired based on Fla. Stat. 83.06(1). This court notes Fla. Stat. 83.06(1) permitting double rent is discretionary, not mandatory. The court denies plaintiff's request for double rent since defendant's claim for discrimination, although not persuasive, was certainly not frivolous. *Greentree Amusement Arcade v. Green Acres Development*, 401 So. 2d 915 (Fla. 4th DCA 1981). For the same reasons this court rejects plaintiff's claim for attorney fees under Fla. Stat. 57.105.

It is therefore:

ORDERED AND ADJUDGED that Plaintiff is entitled to possession of the real property described as 4424 Curry Ford Road, Orlando, Florida for which let execution issue.

The court reserves jurisdiction to determine costs.

---

[4] The issue is not whether Mr. Saldana intended to vacate but whether Ms. Lingo was justified in believing he was vacating. As indicated in the statement of facts, Mr. Saldana's English is not good and Ms. Lingo reasonably could have understood him to be vacating the premises. Further, Mr. Saldana did erect a sign "Future Home of Conway Cleaners" on a vacant lot next to the plaza prior to her renting the store to Mr. Levering.