**Munir MALIK**

v.

**COMBUSTION ENGINEERING, INC.**

**Civ. No. H–86–858 (PCD).**

United States District Court,
D. Connecticut.

Nov. 12, 1986.

M. Daniel Friedland, Hartford, Conn., for plaintiff.

Timothy S. Hollister, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff seeks declaratory and injunctive relief, backpay and compensatory damages for defendant's alleged wrongful conduct as plaintiff's employer, including his dismissal. Plaintiff asserts three causes of action under: (1) the fourteenth amendment; (2) 42 U.S.C. § 2000e *et seq.;* and (3) 42 U.S.C. § 1981. Defendant has moved to dismiss on three grounds:

1. Plaintiff's fourteenth amendment claim fails to allege that defendant acted under color of state law.

2. Plaintiff's Title VII claim fails to allege compliance with the prerequisites to such an action.

3. Plaintiff's 42 U.S.C. § 1981 claim fails to allege that plaintiff was discriminated against based on race.

### Discussion

#### Fourteenth Amendment

Plaintiff's complaint fails to allege the prerequisite of state action necessary to sustain a fourteenth amendment claim. *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982) (the allegedly unconstitutional conduct must be attributable to the state). Plaintiff responds that disposition of this issue should be deferred until discovery is complete and plaintiff is able to determine whether defendant's conduct can be construed to be state action. A motion to dismiss is determined by the pleadings. While a motion for summary judgment might be deferred under circumstances where fairness dictates an opportunity for a plaintiff to discover facts before being held to have no case as a matter of law, such is not the situation with a motion to dismiss. Presumably mindful of the strictness of Rule 11, Fed.R.Civ.P., plaintiff has not pleaded that defendant's actions constitute state action, a prerequisite to invoking the fourteenth amendment. It would appear that plaintiff has no factual basis on which to make such a claim. It would be improper to hold a claim open for the possibility it could be made. Dismissal of this claim is based solely on the present record. It is not preclusive of pleading the claim should additional information warrant it.

The motion to dismiss is granted as to the fourteenth amendment claim.

### Title VII

Defendant claims plaintiff's Title VII claim should be dismissed because plaintiff has failed to allege that he has satisfied the jurisdictional prerequisites to a Title VII claim. Plaintiff has invoked Fed.R.Civ.P. 15 and filed an amended complaint on October 28, 1986. Paragraphs 27–29 and the attachment thereto satisfy the pleading requirements for plaintiff's Title VII action. *McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (In Title VII action, plaintiff must timely file his charge of employment discrimination with the EEOC and receive a right to sue letter from the EEOC.). The motion to dismiss the Title VII claim is denied.

### 42 U.S.C. § 1981

■ Defendant's third argument is that plaintiff's § 1981 claim must be dismissed on the ground that plaintiff has failed to allege that he was discriminated against based on race.

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

In *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 287–96, 96 S.Ct. 2574, 2582–86, 49 L.Ed.2d 493 (1976), the Supreme Court held that white persons could state a claim under 42 U.S.C. § 1981. The court considered both the legislative history and the purpose of the statute and found that the statute did not apply strictly

to members of the black race. The Supreme Court did not, however, define what it meant by race. In view of this ambiguity, federal courts have subsequently wrestled with the problem of defining which persons of certain ethnic or national origins satisfy the distinct race requirement of § 1981.[1]

The embrace of § 1981 is of "all persons" and thus a broad sweep would seem to have been intended. Yet by its grant of the same rights "as is enjoyed by white persons," a racial contradistinction is suggested. When § 1981 was adopted in the post Civil War era, the preeminent distinction was between the rights and privileges enjoyed by whites as opposed to the denial of those rights to blacks. Yet, Congress did not make its grant to "all blacks;" it was made to "all persons." Thus, a broad construction of what was meant by "all persons" is proper and warrants a finding that the grant was to all persons so as to make the rights and privileges of the most favored group, then defined as "white persons," available to all. Thus, § 1981 can properly be read as creating a statutory right to enforce that equality of rights to anyone denied equality of rights, with whites as exemplary of the most favored class. This would preclude discrimination against anyone who is not found to be part of the most favored group and not solely on the basis of racial distinction. Thus, the liberal construction of § 1981 dictated by its remedial nature suggests that anyone may invoke § 1981 if their non-inclusion in the preeminent class and the denial of equality is based on some artificial distinction which could include ethnic origin. A white person is not a precise, accurate classification. The polyglot nature of the society and mixing of bloods preclude a white distinction in an absolute fashion. Thus, the use of "white persons" as the standard cannot and could not have been intended as a clearly and solely racial distinction.

---

**1.** In *Keating v. Carey,* 706 F.2d 377, 383–84 (2d Cir.1983), the Second Circuit denied a political party standing to assert a § 1981 claim. Although it considered in dicta the line of cases which had considered national origin discrimination, it did not state its view on this issue nor did it attempt to define race.

Thus, the right created by § 1981 cannot be deemed limited to non-whites.

This critical legal question has not been interpreted uniformly.[2] *Compare Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 514–18 (3d Cir.1986) (American of Iranian descent could state claim under § 1981) (U.S. Appeal Pend'g); *Monzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 970 (10th Cir.1979) (Mexican American); *Abdulrahim v. Gene B. Glick Co.*, 612 F.Supp. 256, 262–65 (N.D.Ind.1985) (Pakistani); *Banker v. Time Chemical, Inc.*, 579 F.Supp. 1183, 1186–87 (N.D.Ill.1983) (East Indian); *Pollard v. City of Hartford*, 539 F.Supp. 1156, 1164–65 (D.Conn.1982) (Hispanic); *Aponte v. National Steel Serv. Center*, 500 F.Supp. 198, 202 (N.D.Ill.1980) (Mexican American); *Tayyari v. New Mexico State Univ.*, 495 F.Supp. 1365, 1369–70 (D.N.M.1980) (Iranian); *Khawaja v. Wyatt*, 494 F.Supp. 302, 304–05 (W.D.N.Y.1980) (Pakistani American), *with Shaare Tefila Congregation v. Cobb*, 785 F.2d 523, 526–27 (4th Cir.1986) (American of Jewish descent could not state a claim under § 1982) (U.S. Appeal Pend'g); *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir.1984) (Iraqi descent); *Davis v. Boyle-Midway, Inc.*, 615 F.Supp. 560 (N.D.Ga.1985) (Hispanic); *Petrone v. City of Reading*, 541 F.Supp. 735, 738 (E.D.Pa.1982) (Italian).

As is readily apparent from this list, the courts are well divided on this issue.[3] The analysis conducted by the *Al-Kazraji* court is persuasive on the propriety of allowing one to state a § 1981 claim based on allegations of national origin discrimination rather than mere race discrimination. " 'Just what constitutes a race is a hard question to answer, since one's classification usually depends on the purpose of classification.' " *Al-Khazraji*, 784 F.2d at 517 n. 15, quoting *Ortiz v. Bank of America*, 547 F.Supp. 550, 565 (E.D.Cal.1982). Indeed, there are times when it would seem that the line

between national origin and race is so thin as to preclude any reasonable basis upon which a proper determination could be made. Moreover, to begin granting federal rights to one person because he/she is a shade darker or a shade lighter than another would be to engage in the type of "stereotyping ... the civil rights statutes were designed to prevent." *Khawaja*, 494 F.Supp. at 305 n. 1. Accordingly, defendant's motion to dismiss plaintiff's 42 U.S.C. § 1981 claim is denied. In pleading discrimination based on skin color and national origin, plaintiff has adequately pleaded a denial to him of rights of the preeminent class, white persons. This suffices for a claim under § 1981.

SO ORDERED.

---

2. Most recently, the Fifth Circuit Court of Appeals held that a spouse could state a claim under 42 U.S.C. § 1981 for the discrimination lodged against her because of her marriage to a person of Iranian descent. The court noted that a taxonomical definition of race was not in

keeping with *McDonald*. *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111 (5th Cir.1986).

3. Perhaps the Supreme Court may resolve the issue in considering *Al-Khazraji* and *Shaare Tefila*.