Dr. Rosalynde K. SOBLE

v.

UNIVERSITY OF MARYLAND.

Civ. A. No. M–83–290.

United States District Court,
D. Maryland.

Oct. 13, 1983.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On January 28, 1983, the plaintiff, Dr. Rosalynde K. Soble, filed suit against the defendant, the University of Maryland, alleging discrimination on the basis of sex resulting in the denial of promotion, unequal pay, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206 (Paper No. 1). The defendant filed a Motion to Dismiss asserting therein (1) that the plaintiff's claim under Title VII for denial of promotion is time barred, and (2) that this court lacks jurisdiction over the plaintiff's claim of retaliatory reassignment due to the failure of the plaintiff to receive a "right to sue" notice before filing suit. (Paper No. 4). The plaintiff opposes the Motion to Dismiss (Paper No. 5), and the defendant has filed a reply. (Paper No. 7). On July 15, 1983, the plaintiff amended her complaint to indicate receipt by her on June 16, 1983, of a "right to sue" notice from the EEOC regarding her November 19, 1982 charge. After reviewing the memoranda in this case, the court concludes that no hearing is necessary. Local Rule 6(E).

### I. *Promotion Claim/Time Barred*

In her complaint the plaintiff alleges that, despite repeated requests, she was denied promotion from the rank of Assistant Professor to the rank of Associate Professor at the University of Maryland. The dates these requests were denied are not stated in the complaint, but the Motion to Dismiss and the opposition thereto provide the following sequence of events.

The plaintiff is employed as an Assistant Professor with the University of Maryland School of Dentistry, Department of Oral Health Care Delivery. In 1973, the Dental School's Promotion & Tenure Committee approved a recommendation of the plaintiff for a promotion to the rank of Associate Professor, but the University of Maryland Chancellor did not concur citing the plaintiff's lack of doctorate degree. (Paper No. 5, Exh. A). In 1976, the plaintiff received her Doctor of Philosophy degree from the University of Maryland, College of Education, Department of Social Foundations of Education.

Thereafter, in October of 1976, the plaintiff was informed by the Dean of the Dental School, Dr. Reese, that he had requested Dr. Thomas Snyder, Dean of the plaintiff's department at the Dental School, to submit her name to the new Committee on Faculty Appointments, Promotions, Tenure & Professional Affairs ("the Committee") for consideration for promotion effective on July 1, 1977. (Id., Exh. B, at 1–2).

On April 12, 1977, the plaintiff learned that the Committee had not recommended her promotion, and on April 14, 1977, the plaintiff learned that Dr. Snyder had concurred in that decision. (Id. Exh. C & D). On May 13, 1977, in response to the plaintiff's April 29, 1977 letter, the Committee informed the plaintiff of its reaffirmation of its previous decision and informed her that promotion was not approved, because of a lack of support by her department chairman and the previous chairman, and because of little evidence of current support of her teaching effectiveness. (Id. Exh. E).

On May 26, 1977, the plaintiff filed a grievance with the Grievance Committee at the University of Maryland regarding her failure to be promoted. (Paper No. 1, ¶ 13). On June 27, 1977, the Grievance Committee recommended, after completing hearings on the plaintiff's complaints arising from the lack of a recommendation for promotion from the Committee, that the Committee reconsider its most recent decision not to recommend. (Paper No. 5, Exh. F). On September 21, 1977, the Committee voted to reconsider the original decision not to recommend Dr. Soble for promotion, (Id. Exh. G) on the condition that a letter of recommendation from the plaintiff's present department head and evidence of her teaching effectiveness be supplied.

On October 13, 1977, Dr. Snyder, in a memorandum to all Oral Health Care Delivery faculty, requested advice regarding plaintiff's promotion. (Id. Exh. H). On January 10, 1978, Dr. Snyder informed the Committee that he would not offer his support of Dr. Soble for promotion due to her lack of "the characteristics or skills of a consistently excellent teacher." (Id. Exh. I, at 1). On January 18, 1978, the Committee voted to uphold the original decision, (Id. Exh. J), and on February 8, 1978, the plaintiff was notified of that action. (Id. Exh. K).

On February 21, 1978, the plaintiff filed her original charge with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of sex in the denial of promotion, harassment, and the denial of financial recognition for her having obtained a Ph.D. (Paper No. 4, Exh. B). On October 20, 1978, the plaintiff amended her original charge incorporating the May 13, 1977 decision, the non-support from Dr. Snyder on January 10, 1978, as well as the grievances she filed. (Id. Exh. C).

Thereafter, on October 27, 1978, the Grievance Committee concluded that Dr. Soble had a legitimate grievance against Dr. Snyder for lack of documentation for his decision not to support her promotion. It recommended that Dr. Reese make a final decision regarding Dr. Soble's promotion to Associate Professor, because the matter could not be referred to the Tenure Committee without a positive letter of support from Dr. Snyder. (Paper No. 5, Exh. L). There is no indication in that record what action Dr. Reese took in response to the Grievance Committee's resolution. Almost a year later, however, on September 24, 1979, the plaintiff was notified by Dr. Reese that Dr. John S. Toll, President of the University of Maryland, had rejected her promotion to the rank of Associate Professor. (Id. Exh. N). On February 19, 1980, Dr. Reese informed the plaintiff that, after reviewing her activities, he would con-

sider resubmitting her name for promotion to Dr. Toll in the fall of 1980. (*Id.* Exh. O).

On November 18, 1982, the plaintiff filed another charge with the EEOC alleging harassment, reassignment and continued lack of promotion and increase in salary due to discrimination on the basis of sex.

The defendant asserts that the denial of promotion claim is time barred because the plaintiff learned of the decision denying her promotion on April 12, 1977 or April 14, 1977, at the latest, when notified by Dr. Snyder, Acting Chairman of the Department of Oral Health Care Delivery at the University of Maryland Dental School, of the Committee's failure to recommend her promotion, his agreement with that recommendation, and his decision not to inquire further into the matter. (Paper No. 5, Exh. C). Because Title VII requires a charge to be filed within 180 days of the alleged discriminatory act or if the act occurred in a "deferral state" within 300 days of the discriminatory act, 42 U.S.C. § 2000e–5(e), and because the plaintiff did not file a charge with the EEOC until February 21, 1978, beyond either the 180 day or the 300 day limit, the defendant contends that this claim is barred for failure to fulfill the statutory requirements of Title VII. Even if the discriminatory act is considered to have occurred as late as May 13, 1977, when the plaintiff was informed of the Committee's decision reaffirming its earlier decision to deny a recommendation for promotion, the EEOC charge filed in February, 1978, was still filed beyond the 180 day period.

The plaintiff, by her counsel, asserts that the denial of promotion is a continuing violation of her rights, and, therefore, her charge with the EEOC was timely filed. Alternatively, the plaintiff notes that some of the decisions to deny promotion occurred within the 180 day filing deadline. Section 706(e) of Title VII provides in part:

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with

respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed within three hundred days after the alleged unlawful employment practice occurred."

42 U.S.C. § 2000e–5(e). Because the State of Maryland, through the Maryland Commission on Human Rights (MCHR), provides a state agency capable of providing relief from discrimination, Maryland is a Title VII deferral state, *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670, 680 n. 26 (D.Md.1979), and the extended period to file should apply.

The defendant, however, asserts that the plaintiff's failure to file a charge with Maryland's state agency within the 180 day state limitations period, *Md.Ann.Code,* Art. 49B § 9(a), results in the plaintiff being denied the benefits of the extended federal filing period.

In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1976), the plaintiff failed to file her age discrimination charge with Iowa's State Civil Rights Commission within Iowa's 120 day age discrimination statute of limitations period. The Supreme Court concluded that Section 633(b) of the ADEA required grievants to resort to state administrative proceedings before bringing a suit in federal court. *Id.* at 754–58, 99 S.Ct. at 2070–72. Justice Brennan, writing for the majority, concluded that:

"exhaustion of state remedies under the ADEA could be met by an untimely filing of a charge with the state agency, for the federal statute did not provide that the prerequisite state charge must be filed within the time limitation prescribed by state law. *See* 441 U.S. at 759, 99 S.Ct. at 2073 (1979)."

By the language used in the majority opinion, it does not appear that the Supreme Court in *Oscar Mayer* confined its holding to state limitations of less than 180 days.[1]

1. The Court noted that Section 633(b): "requires only that state proceedings be commenced 60 days before federal litigation is in-

This court, as well as several other courts, in interpreting language in the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 626(d) similar to the section of Title VII, 42 U.S.C. § 2000e–5(e) at issue here, has held that 300 days is to be allowed for filing an age discrimination claim in federal court in deferral states even if no charge of discrimination has been filed with the appropriate state agency within the limitations period established by the state of 180 days. *Lang v. International Harvester Co.,* No. M–82–667 (D.Md. Apr. 15, 1983). *Accord Aronson v. Crown Zellerbach,* 662 F.2d 584 (9th Cir.1981); *Ciccone v. Textron, Inc.,* 651 F.2d 1 (1st Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981); *Goodman v. Heublein,* 645 F.2d 127 (2d Cir.1981); *Davis v. Calgon Corp.,* 627 F.2d 674 (3d Cir.1980), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981); *Ewald v. Great Atlantic & Pacific Tea Co., Inc.,* 620 F.2d 1183 (6th Cir.), *rev'd and remanded,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980), *remanded,* 644 F.2d 884 (6th Cir. 1981); *Bean v. Crocker Nat'l Bank,* 600 F.2d 754 (9th Cir.1979); *Curto v. Sears Roebuck & Co.,* 552 F.Supp. 891 (N.D. Ill.1982); *Algea v. Schweiker,* 529 F.Supp. 163 (D.Md.1981).

In *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Supreme Court held that a plaintiff need not have filed a charge with the appropriate state agency within 180 days of his discharge in order to take advantage of the extended 300 day filing period available under Title VII. Since the federal statute did not expressly require that a complainant file his charge initially with the state agency within 180 days, the Supreme Court refused to require such a limitation. In reaching this conclusion, the Supreme Court specifically disapproved the holding in *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir.1975), because the court in *Olson* had imposed a filing restriction which was not found in the text of the federal statute. *Mohasco,* 447 U.S., at 814 n. 16 & 816 n. 19, 100 S.Ct. at 2491 n. 16 & 2492 n. 19. The Court felt, as it had in *Oscar Mayer,* that time limitations which are not in the federal statute itself should not be read into the statute.

Although in *Mohasco* the state limitations period was greater than 180 days, the Supreme Court thereafter vacated and remanded for reconsideration in light of *Mohasco* two circuit court opinions which barred ADEA claims for failure to file with a state agency within the 180 day state limitations period. *Ciccone,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980); *Ewald,* 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980). Citing these cases and also noting that the language and purpose of these sections of Title VII and the ADEA are similar, *see Zipes v. Transworld Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Oscar Mayer,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609; *Citicorp Person-To-Person Fin. Corp. v. Brazell,* 658 F.2d 232 (4th Cir.1981), subsequent cases have concluded that Title VII claims are not barred despite a grievant's failure to file a charge with the state agency within a state limitations period of 180 days. *See Jones v. Airco Carbide Chemical Co.,* 691 F.2d 1200 (6th Cir.1982); *Hall v. Ledex, Inc.,* 669 F.2d 397 (6th Cir.1982); *Owens v. Ramsey Corp.,* 656 F.2d 340 (8th Cir.1981); *Wiltshire v. Standard Oil Co.,* 652 F.2d 837 (2d Cir.1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 153 (1982); *Platts v. Cordis Dow Corp.,* 558 F.Supp. 114 (S.D.Fla.1983). *See also Baruah v. Young,* 536 F.Supp. 356 (D.Md.1982) (Although the court noted with approval the use of the extended federal filing period despite failure to file within the state 180 day limitations period, this

stituted; besides commencement no other obligation is placed upon the ADEA grievant. *In particular, there is no requirement that, in order to commence state proceedings and thereby preserve federal rights, the grievant must file with the State within whatever time limits are specified by state law.* Rather use of the word 'commenced' strongly implies the opposite— *that state limitations periods are irrelevant* —since, by way of analogy, under the Federal Rule of Civil Procedure even a time-barred action may be 'commenced' by the filing of a complaint." (Citations omitted). *Oscar Mayer,* 441 U.S. at 759, 99 S.Ct. at 2073 (Emphasis added).

determination was unnecessary in light of its determination as to when the plaintiff's claims accrued.)

Because Title VII, unlike the ADEA which permits simultaneous filings with both the EEOC and the state agency, requires that the charge with the EEOC may not be instituted until 60 days after commencing the state charge, 42 U.S.C. § 2000e–5(c),[2] in *Mohasco,* the Supreme Court concluded that in deferral states a grievant who files her Title VII charge with the appropriate state agency within 240 days from the date of the alleged unlawful employment practice has timely filed her charge with the state agency so as to permit review by the EEOC if filed there within the 300 day deadline. Thus, under Title VII to insure compliance with the act's filing deadlines, a grievant must file with a state agency within 240 days of the alleged discriminatory act. Initiating a charge with a state agency, after the 240 day period will not ensure that the 60 day period will be fulfilled.[3]

This 240 day limitations period has not, however, been retroactively applied. *Wiltshire,* 652 F.2d at 840–42; *Hall,* 669 F.2d 399. Rather, courts have concluded, after reviewing the requirements for retroactive application of a decision in light of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), *see also Stovell v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that claimants filing a charge containing Title VII claims with the

EEOC before June 23, 1980 (the date of the *Mohasco* decision) are entitled to the 300 day rather than the 240 day extended period for the prerequisite filing with the state agency. *Wiltshire,* 652 F.2d at 842.

■ After reviewing the cases decided under the ADEA and Title VII, this court concludes that grievants in deferral states need not file a charge with a state agency within the state limitations period in order to obtain the benefit of the extended period of filing with the EEOC available in Title VII under 42 U.S.C. § 2000e–5(e). Prior to June 23, 1980, claimants are entitled to the 300 day rather than the 240 day, extended period for filing with the EEOC.

■ In the present case, three decisions were made by the Committee by which it refused to recommend the plaintiff for a promotion, to wit, (1) on April 14, 1977, (2) on May 13, 1977, and (3) on January 18, 1978. The January, 1978 decision, even if viewed as a discrete violation of plaintiff's rights, was the subject of a timely EEOC charge filed in February, 1978. Upon filing with the EEOC the charge would have been referred to the appropriate state agency, 42 U.S.C. § 2000e–5(d); 29 C.F.R. § 1601.13, and after the passage of the required 60 day period the EEOC could have started to consider the claims in the charge well within the 300 day period. The May 13, 1977 refusal to recommend a promotion was also timely filed, for it was the subject of a

2. 42 U.S.C. § 2000e–5(c) provides in pertinent part:

"In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated."

3. After *Mohasco* only by filing a charge with the state agency within 240 days after the discriminatory act can one ensure that the 60 day

period will run and the EEOC will consider the charge within the 300 day federal filing period. If the charge is filed or referred to a state agency after the 240 day period one must await further developments.

"[I]f the hypothetical complainant files his charge 270 days after his discharge, and the EEOC refers the charge to the relevant state agency immediately, and that agency terminates its proceedings within 30 days, the federal charge will have been timely filed. But if the state agency does not terminate its proceedings for a year (perhaps due to backlog, or ironically, because the complaint has merit), then the EEOC cannot consider the charge to have been filed until 330 days have elapsed, and the complainant will be unable to invoke his federally protected rights." *Mohasco,* 447 U.S. at 834, 100 S.Ct. at 2501 (J. Blackmun, dissenting).

charge filed with the EEOC less than 300 days after the decision. Even under the extended period for filing, however, the April decision of the Committee not to recommend for promotion, if viewed in isolation as a discrete act of discrimination, would be barred, not being the subject of a timely filed charge. Thus, the plaintiff asserts that her denial of promotion claim is a continuing violation which would toll the running of the statute of limitations.

Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1006 (11th Cir.1982); *Lawson v. Burlington Industries, Inc.,* 683 F.2d 862, 864 (4th Cir.1982); *Baruah,* 536 F.Supp. at 362.

Where the allegedly "discriminatory" employment practice has continuously affected the complaining employees and is continuing," the time limits do not run as long as the discrimination continues. *Kim v. Coppin State College,* 662 F.2d 1055, 1061 (4th Cir.1981). *See also Jenkins v. Home Ins. Co.,* 635 F.2d 310, 311–12 (4th Cir.1980).

In *Patterson v. American Tobacco,* 634 F.2d 744, 751 (4th Cir.1980), *cert. denied,* 452 U.S. 937, 101 S.Ct. 3078, 69 L.Ed.2d 951 (1981), the Fourth Circuit examined the concept of continuing violations in an employment discrimination case under Title VII. There the court found that the promotional policies of American Tobacco locked black and women employees into less favorable positions and held that a systematic and continuing practice of the company, rather than the discrete promotional decisions, was the true focus of attention in that case.

In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the plaintiff was denied tenure and offered a one-year terminal contract which would not be renewed. The plaintiff asserted that the limitations period did not commence to run until the one year con-

tract expired, but the Supreme Court disagreed. The Court viewed the limitations period as having run, stating, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. 503.

Explaining the *Ricks* result, the Court in *Chardon v. Fernandes,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981), stated that "the proper focus is on the time of the *discriminatory* act, not the point at which the *consequences* of the act become painful." (Emphasis in original).

Recognizing the teachings of the Supreme Court and the Fourth Circuit, district courts have examined the facts of each case to determine whether a continuing policy of discrimination is allegedly practiced or whether the situation involves only a series of discrete decisions. *Sanders v. Duke University,* 538 F.Supp. 1143, 1146 (M.D.N.C.1982). Thus, where a demotion alone is asserted, no claim of a continuing violation is appropriate. *See Mazer v. Control Data Corp.,* 19 F.E.P. 1192, 1193 (D.Md. 1978); *Platt v. Burroughs Corp.,* 424 F.Supp. 1329, 1334–35 (E.D.Pa.1976). Nor is a claim of a continuing violation accepted where there was a demotion of a grievant and subsequent denials of promotions and there are no allegations of a concerted plan. *Wippel v. Prudential Ins. Co.,* No. M–82–1861 (D.Md. Nov. 30, 1982).

In *Small v. Bethlehem Steel Corp.,* No. M–82–1825 (D.Md. Jan. 10, 1983), this court concluded that where the plaintiff had alleged, in his complaint, that Bethlehem Steel by pattern and practice was seeking to eliminate the older workers from its supervisory ranks and to keep them out, a valid continuing violation claim had been alleged and the initial demotion claim would not be dismissed.

In the case *sub judice,* the plaintiff contends that the continuing violation tolling doctrine should be applied because like the plaintiffs in *Kim* she has been consistently paid less than her male counterparts. In addition, the plaintiff characterizes the de-

cisions denying her promotion as an automatic perpetuation of an initial discriminatory act.

■ The plaintiff's claim of unequal pay is not the claim which the defendant seeks by its motion to dismiss. The fact that the plaintiff was paid less during this time than she might have been if she had been promoted does not result in the conclusion that her promotion denial was of a continuing nature. To hold otherwise would ensure that every claim of denial of promotion to a higher paying position would toll the period to file one's charge as long as one merely continued to be employed in the lower position of employment. This argument was distinctly rejected by the Supreme Court in *Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431.

■ While the plaintiff has continued her efforts to obtain a promotion, continuing efforts does not mean that a continuing violation is present. In *International Union of Electrical, Radio & Machine Worker v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Supreme Court concluded that the existence and utilization of grievance procedures did not toll the running of the limitations period which would otherwise begin on the date the allegedly discriminatory act took place.

In the present case, the plaintiff also used the grievance procedures available to her. The fact, however, that she continued her efforts through that forum to achieve promotion does not erase the fact that the first decision by the Committee and by Dr. Snyder not to recommend her for promotion occurred in April of 1977. Like the Supreme Court in *Robbins & Myers, Inc.,* this court cannot conclude that her continued efforts transformed the decisions of April, 1977 into a part of a continuing violation of Title VII by the defendant, thereby tolling the statute of limitations.

■ The characterization of events experienced by the plaintiff are best described by her counsel when he wrote,

"plaintiff was the victim of a series of distinct discriminatory acts which took the form of repeated consideration for and rejection of her promotion requests. Moreover, she was discriminated against each year when she was not recommended for promotion under the University's promotion plan for faculty members."

With this characterization the court agrees. The plaintiff was allegedly denied a promotion several times, but there is nothing to indicate any plan or practice of sex discrimination. In short, the plaintiff's claim of discrimination in denial of promotion arose each time she was denied the promotion, and, because of this, the April, 1977 decision not to recommend the plaintiff for promotion is barred as the subject of a Title VII claim. Accordingly, the denial of promotion claim arising from the April, 1977 decision will be dismissed.

II. *Retaliatory Transfer/Right to Sue Notice*

On November 19, 1982, the plaintiff filed a charge with the EEOC alleging for the first time a discriminatory retaliatory assignment from the University of Maryland Dental School to the Department of Social Work. (Paper No. 4, Exh. D). On January 28, 1983, the plaintiff filed this suit alleging at that time a retaliatory reassignment due to discrimination on the basis of sex. (Paper No. 1, ¶ 16). On June 16, 1983, the plaintiff received her right to sue notice for the claims asserted in the November, 1982 charge. (Paper No. 9, at 7).

In its Motion to Dismiss the defendant contends that this court lacks jurisdiction due to the failure of the plaintiff to obtain a right to sue notice before filing suit. The plaintiff states that the first charge, as amended, and the second charge are to be read together to evidence a continuing violation of harassment. Therefore, the plaintiff asserts this court may consider these claims together "since they arose out of the plaintiff's original discrimination complaint." (Paper No. 5, at 14). The plaintiff apparently contends that the first right to sue notice received before filing suit covers the claims in the November, 1982 charge.

■ Although a claim of harassment could conceivably encompass a retaliatory

reassignment, there is no evidence in the record that this reassignment occurred before the original charge was filed. Moreover, the fact that a second "right to sue" notice was issued indicates that the two charges filed separately with the EEOC alleged separate and distinct violations.

In *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir.1982), the Fourth Circuit concluded that a "right to sue" notice, absent due to EEOC procedures which prevented the issuance of such a notice when the parties had entered into a settlement agreement, was not required to fulfill jurisdictional prerequisites to suit in federal court. In a subsequent case, after reviewing Judge Winter's opinion in *Perdue,* this court concluded that the holding in *Perdue* was not limited to its facts. The *Perdue* court concluded that it was the " '*entitlement* to a "right to sue" notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts.' *Perdue,* 690 F.2d at 1093 (emphasis added)." *Young v. HRB Singer, Inc.,* No. M–83–390, at 5, (D.Md., June 8, 1983). Consequently, the undersigned judge held in *Young* that had the plaintiff filed suit after the conciliation period, 42 U.S.C. § 2000e–5(c) & (f)(1) when he would have been entitled to a "right to sue" notice, there would have been no jurisdictional defects in that respect.

 In *Young* and in this case, the plaintiff filed suit on Title VII grounds before the conciliation period for these claims had passed. As this court previously noted, a plaintiff must exhaust his administrative remedies before filing suit under Title VII. *Stebbins v. Nationwide Mutual Insurance Co.,* 382 F.2d 267 (4th Cir.1976), *cert. denied,* 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968). The passage of the conciliatory period is viewed as a prerequisite to filing suit alleging Title VII claims. *See Loney v. Carr Lowrey Glass Co.,* 458 F.Supp. 1080, 1081 (D.Md.1978); *Young,* No. 83–390 at 7. When, however, the plaintiff is requesting preliminary relief or when the EEOC's workload precludes consideration within the statutory conciliation period, courts have considered the plaintiff's Title VII claims despite the fact that the conciliatory period had not expired. *See, e.g., Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670 (D.Md.1979); *Eldredge v. Carpenters Joint Apprenticeship & Training Committee,* 440 F.Supp. 506 (N.D.Cal.1977).

In the present case, there is no showing that the plaintiff fits in one of those recognized exceptions. Normally, the plaintiff's Title VII claims would be dismissed to be refiled at the proper time. Here, however, the proper time has arrived for the plaintiff is entitled to, and has in fact received, a "right to sue" notice on the November charges. Accordingly, the claim alleging discrimination in retaliatory reassignment will not be dismissed.

For the reasons stated above, it is this 13th day of October, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion to Dismiss filed by the defendant be, and the same is hereby, GRANTED as to the Title VII claim relating to the April, 1977 denial of promotion and DENIED in all other respects.

2. That the Clerk shall mail a copy of this Memorandum and Order to counsel for both parties.