**EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION**

v.

**OCEAN CITY POLICE DEPARTMENT.**

Civ. No. K–84–4448.

United States District Court,
D. Maryland.

June 30, 1985.

Johnny J. Butler, Acting Gen. Counsel, and E.E.O.C., Washington, D.C., Gerald S. Kiel, Regional Atty., Frederick P. Charleston, Supervisory Trial Atty., and E.E.O.C., Baltimore, Md., for plaintiff.

Richard T. Sampson, Kathleen Pontone and Semmes, Bowen and Semmes, of Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

On December 6, 1983, the Equal Employment Opportunity Commission (EEOC) issued a subpoena *duces tecum* to the Ocean City Police Department (Respondent), requiring the production of certain data allegedly necessary to the investigation of a charge of discrimination filed against Respondent by Keith Wright. That subpoena was issued after Respondent had failed to

respond fully to the EEOC's requests for data.

On December 16, 1983, Respondent filed a *Petition to Revoke or Modify the Subpoena.* On March 10, 1984, the EEOC issued its Determination on Respondent's petition, denying the request to revoke the subpoena in its entirety, and modifying the subpoena only as to the time limit for compliance. On August 3, 1984, the General Counsel for the EEOC affirmed the Determination issued by EEOC's Baltimore District office, and directed Respondent to provide the requested data by September 7, 1984. To date, Respondent has failed to comply with the subpoena. In that context, the EEOC instituted this case in which it has filed an Application for Enforcement of Subpoena *Duces Tecum.*

On December 10, 1984, this Court ordered Respondent to appear on January 22, 1985, to show cause why this Court should not require Respondent to comply with the subpoena. Subsequently, on December 10, 1984, Respondent opposed in writing EEOC's subpoena enforcement action, the EEOC filed a written rebuttal, and a nonevidentiary hearing was held on the record on June 7, 1985. At the conclusion of that hearing, this Court informed counsel that it would enter an Order enforcing the subpoena as soon as it could prepare and file the within opinion and such Order.

## I

Keith Wright alleges, *inter alia,* that he has been discharged by Respondent because of Wright's race, that only 9 of the 75 officers on the police force were black, and that while on the force, he was continuously harassed. Wright was discharged on April 14, 1981. On November 19, 1981, he completed an EEOC "Intake Questionnaire," and on December 16, 1981, he signed a formal "Charge of Discrimination." That formal charge was received by the EEOC on December 21, 1981, 251 days after April 14, 1981, the date of the discharge. At no time did Wright file any charge with the Maryland Commission on Human Rights (MCHR); nor did the EEOC ever refer this matter to the MCHR.

Section 706(b) of Title VII of the. Civil Rights Act of 1964 authorizes the EEOC to conduct investigations of potential violations of the Act:

> Whenever a charge is filed by ... a person claiming to be aggrieved ..., alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge ... on the employer ... within ten days, and shall make an investigation thereof ... [i]f the Commission determines after such investigation that there is not reasonable cause to believe the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action ... [i]f the Commission determines after such investigation that there is reasonable cause to believe that such charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion ...

Section 709(a) of Title VII, as amended, 42 U.S.C. § 2000e–8(a), provides that the Commission may have "access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." Section 710 of Title VII, 42 U.S.C. § 2000e–9, authorizes the Commission to obtain information relevant to discriminatory charges and to issue subpoenas requiring the testimony of witnesses and the production of evidence. Section 710 also confers upon any district court of the United States the jurisdiction to issue an order of compliance to any person refusing to obey a subpoena. *Id.*

The EEOC is entitled to access only to evidence "relevant to the charge under investigation," Section 2000e–8(a). The following legislative history reveals that that limitation upon the EEOC's authority is

not, as Justice Marshall wrote in *EEOC v. Shell Oil Company*, 466 U.S. 54, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984), "accidental":

> "It is important to note that the Commission's power to conduct an investigation can be exercised only after a specific charge has been filed in writing. In this respect the Commission's investigatory power is significantly narrower than that of the Federal Trade Commission or of the Wage and Hour Administrator, who are authorized to conduct investigations, inspect records, and issue subpenas [sic] whether or not there has been any complaint of wrongdoing." 110 Cong.Rec. 7214 (1964) (citations omitted).

In *Shell Oil*, after quoting that passage from the legislative history, Justice Marshall concluded that:

> we must strive to give effect to Congress' purpose in establishing a linkage between the Commission's investigatory power and charges of discrimination. If the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid charge, Congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted. Accordingly, we hold that the existence of a charge that meets the requirements set forth in § 706(b) ... is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.

*Id.* (footnote omitted). Accordingly, in order to establish entitlement to the grant of its written petition to enforce the subpoena in question, the EEOC must show that a valid charge was duly filed by Wright.

## II.

Section 2000e–5(c), 42 U.S.C. states in part:

> In the case of an alleged unlawful employment practice occurring in a State ... which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed under subsection (b) of this section by the person aggrieved *before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated* ... (emphasis added).

Section 706(e) of Title VII, 42 U.S.C. Section 2000e–5(e) provides in part:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed within three hundred days after the alleged unlawful employment practice occurred....

█ The State of Maryland, through the MCHR, has established a state agency capable of affording relief from discrimination. Thus, Maryland is a Title VII "deferral" state in which the extended 300-day period for filing charges applies. *Soble v. University of Maryland*, 572 F.Supp. 1509, 1512 (D.Md.1983), citing to *Vanguard Justice Society, Inc. v. Hughes*, 471 F.Supp. 670, 680 n. 26 (D.Md.1979).

In this case, Wright did not file a charge with the EEOC within the 180 day period or with the MCHR within the applicable state limitations period. Herein, the question arises as to whether, in order to invoke the extended 300-day federal filing period, a claimant must file a state charge within the *state* limitations period. The Maryland limitations period, pursuant to Article 49(b) of the Annotated Code of Maryland, Section 9(a), is 180 days.

In *Mohasco Corporation v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), Justice Stevens wrote in his majority opinion as follows (at 809–10, 100 S.Ct. at 2488–89):

The question in this Title VII case is whether Congress intended the word "filed" to have the same meaning in subsections (c) [1] and (e) [2] of § 706 of the Civil Rights Act of 1964, 78 Stat 260, as amended in 1972, 86 Stat 104–105, 42 USC §§ 2000e–5(c) and (e) [42 USCS §§ 2000e–5(c) and (e) ]. The former subsection prohibits the filing of an unfair employment practice charge with the federal Equal Employment Opportunity Commission (EEOC) until after a state fair employment practices agency has had an opportunity to consider it. The latter subsection requires that in all events the charge must be filed with the EEOC within 300 days of the occurrence. We hold that a literal reading of the two subsections gives full effect to the several policies reflected in the statute.

---

[1] "In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection [ (b) ] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority." 86 Stat 104.

[2] "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with re-

spect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." 86 Stat 105.

In *Mohasco*, the dissatisfied employee filed a letter-complaint with the EEOC 291 days after his discharge. The matter was promptly referred by the EEOC to the New York State Division of Human Rights, *id.* at 810, 100 S.Ct. at 2489. That referral constituted a filing of the complaint by the EEOC on behalf of the complainant, *id.* at 816, 100 S.Ct. at 2492. The New York state agency completed its own proceedings 351 days after the date of discharge, *id.* at 812, 817, 100 S.Ct. at 2490, 2492. In that factual context, Justice Stevens, on behalf of a 6–3 majority, noted that "the question" was whether the receipt of the letter by the EEOC constituted a filing with the EEOC within the meaning of Section 706(e), and then wrote:

The answer is supplied by subsection (c), which imposes a special requirement for cases arising in deferral States: "no charge may be filed under subsection [ (b) ] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated...." Thus, in terms, the statute prohibited the EEOC from allowing the charge to be filed on the date the letter was received. Although, as the Court held in *Love v. Pullman Co.*, supra [404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972)], it was proper for the EEOC to hold respondent's "complaint in 'suspended animation,' *automatically filing it upon termination of the State proceedings,*" 404 US at 526 [92 S.Ct. at 618] (emphasis added), that means that the charge was filed on the 351st day, not the 291st. By that time, however, the 300-day period had run and the filing was therefore untimely.

*Id.* at 817, 100 S.Ct. at 2492–93 (footnote omitted).

Earlier in his opinion, (at 815–16, 100 S.Ct. at 2492) (footnote omitted), Justice Stevens concluded that Section 706(e)

> allows a filing with the EEOC after 180 days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice...."

Elaborating, Justice Stevens commented that

> a complainant in a deferral State having a fair employment practices agency over one year old need only file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his federal rights will be preserved. If a complainant files later than that (but not more than 300 days after the practice complained of), his right to seek relief under Title VII will nonetheless be preserved if the State happens to complete its consideration of the charge prior to the end of the 300-day period.

*Id.* at 814 n. 16, 100 S.Ct. at 2491 n. 16 (emphasis added). Further, *id.* at 816, n. 19, 100 S.Ct. at 2492 n. 19, Justice Stevens added that "Congress included no express requirement that state proceedings be initiated by any specific date" and that "we do not believe that a court should read in a time limitation provision that Congress has not seen fit to include, ... at least when dealing with 'a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.' *Love v. Pullman Co.,* 404 U.S. 522, 527 [92 S.Ct. 616, 619, 30 L.Ed.2d 679]."

In *Hedman v. Coppin State College,* 35 F.E.P. Cases 7 (D.Md.1982), the question arose as to whether certain claims of discriminatory employment practices were barred by limitations. In holding that they were so barred, Judge Ramsey wrote (at 11):

> If the charge must be filed with the state fair employment practices agency under 42 U.S.C. § 2000e–5(c), the time for filing an EEOC charge is extended to 300 days.

*Mohasco Corp. v. Silver,* 447 U.S. 807, 810 [100 S.Ct. 2486, 2489, 65 L.Ed.2d 532] 23 FEP Cases 1 (1980). The State of Maryland has established a deferral agency—the Maryland Commission on Human Relations (MCHR)—with authority to provide relief from unlawful employment practices. Article 49B, § 9(a) of the Annotated Code of Maryland provides that to be timely, a charge must be filed with the MCHR within six months of the alleged discriminatory conduct. Neither Hedman nor Grattan claim to have filed charges with the MCHR within six months of the alleged discriminatory conduct. Charges of discrimination, however, in both cases were filed with the EEOC within 180 days of their terminations.[2]

In *Mobley v. Acme Markets, Inc.,* supra, 473 F.Supp. [851] at 857 [ (D.C.Md. 1979) ], the U.S. District Court for this District, relying on the Court of Appeals for the Fourth Circuit's decision in *Doski v. M. Goldseker Co.,* 539 F.2d 1326, 12 FEP Cases 1751 (4th Cir.1976), held that to trigger the longer, 300-day time limit for filing charges with the EEOC, state charges must be timely filed under state law. Accord, *Battle v. Clark Equipment, Brown Trailer Division,* 524 F.Supp. 683, 686, 27 FEP Cases 830 (N.D.Ind.1981) (and the numerous cases cited therein).[3] The Supreme Court's subsequent decision in *Mohasco Corp. v. Silver,* supra, does not require a different result. In Mohasco, the Supreme Court noted that a claimant in a deferral state was not required to file a charge of discrimination with the state's deferral agency within 180 days to benefit from the 300-day period for filing a charge with the EEOC. In that case, however, the plaintiff filed timely charges with the New York deferral agency under that state's one year limitations period. Thus, Mohasco did not disturb the principal first stated in this district in Mobley that plaintiffs who fail to file timely charges with deferral state agencies can-

not take advantages of Section 706(e)'s 300-day limitation.

2 Defendants do not contest the timeliness of Hedman's termination and equal pay claims and Grattan's termination claim, the principal claims made in these lawsuits. As counsel for plaintiffs noted at the hearing, it is not critical in these cases whether 180 days or 300 days is the appropriate limitations, since plaintiffs' claims, in large part, are either well within 180 days of their filings or well beyond 300 days of their filings with the EEOC.

3 For an outline of the division on this issue which has existed among the lower federal courts, see *Baruah v. Young*, 536 F.Supp. 356, 361–62, 31 FEP Cases 1609 (D.Md.1982).

In *Soble v. University of Maryland*, 572 F.Supp. 1509, 1512–14 (1983), Judge Miller set forth the following analysis and conclusions:

In *Oscar Mayer & Co. v. Evans*, 441 U.S. 750 [99 S.Ct. 2066, 60 L.Ed.2d 609] (1976), the plaintiff failed to file her age discrimination charge with Iowa's State Civil Rights Commission within Iowa's 120 day age discrimination statute of limitations period. The Supreme Court concluded that Section 633(b) of the ADEA required grievants to resort to state administrative proceedings before bringing a suit in federal court. *Id.* at 754–58 [99 S.Ct. at 2070–72]. Justice Brennan, writing for the majority, concluded that:

"exhaustion of state remedies under the ADEA could be met by an untimely filing of a charge with the state agency, for the federal statute did not provide that the prerequisite state charge must be filed within the time limitation prescribed by state law. See 441 U.S. at 759 [99 S.Ct. at 2073]."

By the language used in the majority opinion, it does not appear that the Supreme Court in *Oscar Mayer* confined its holding to state limitations of less than 180 days.[1]

This court, as well as several other courts, in interpreting language in the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 626(d) similar to the section of Title VII, 42 U.S.C. § 2000e–5(e) at issue here, has held that 300 days is to be allowed for filing an age discrimination claim in federal court in deferral states even if no charge of discrimination has been filed with the appropriate state agency within the limitations period established by the state of 180 days. (citations omitted).

In *Mohasco Corp. v. Silver*, 447 U.S. 807 [100 S.Ct. 2486, 65 L.Ed.2d 532], the Supreme Court held that a plaintiff need not have filed a charge with the appropriate state agency within 180 days of his discharge in order to take advantage of the extended 300 day filing period available under Title VII....

Although in *Mohasco* the state limitations period was greater than 180 days, the Supreme Court thereafter vacated and remanded for reconsideration in light of *Mohasco* two circuit court opinions which barred ADEA claims for failure to file with a state agency within the 180 day state limitations period. *Ciccone [v. Textron, Inc.]*, 449 U.S. 914 [101 S.Ct. 311, 66 L.Ed.2d 143 (1980)]; *Ewald [v. The Great Atlantic and Pacific Tea Co., Inc.]*, 449 U.S. 914 [101 S.Ct. 311, 66 L.Ed.2d 143 (1980)]. Citing these cases and also noting that the language and purpose of these sections of Title VII and the ADEA are similar, see *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385 [102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)]; *Oscar Mayer*, 441 U.S. 750 [99 S.Ct. 2066, 60 L.Ed.2d 609]; *Citicorp Person-To-Person Fin. Corp. v. Brazell*, 658 F.2d 232 (4th Cir.1981), subsequent cases have concluded that Title VII claims are not barred despite a grievant's failure to file a charge with the state agency within a state limitations period of 180 days. *See Jones v. Airco Carbide Chemical Co.*, 691 F.2d 1200 (6th Cir.1982); *Hall v. Ledex, Inc.*, 669 F.2d 397 (6th Cir.1982); *Owens v. Ramsey Corp.*, 656 F.2d 340 (8th Cir.1981), *Wiltshire v. Standard Oil Co.*, 652 F.2d 837 (9th Cir.1981), *cert. denied*, 455 U.S. 1034 [102 S.Ct. 1737, 72 L.Ed.2d 153] (1982) [other citations omitted]....

Because Title VII, unlike the ADEA which permits simultaneous filings with

both the EEOC and the state agency, requires that the charge with the EEOC may not be instituted until 60 days after commencing the state charge, 42 U.S.C. § 2000e–5(c) [footnote 2 omitted], in *Mohasco*, the Supreme Court concluded that in deferral states a grievant who files her Title VII charge with the appropriate state agency within 240 days from the date of the alleged unlawful employment practice has timely filed her charge with the state agency so as to permit review by the EEOC if filed there within the 300 day deadline....

This 240 day limitations period has not, however, been retroactively applied. *Wiltshire* [*v. Standard Oil Company of California* ], 652 F.2d [837, 840–42 (9th Cir.1981) ]; *Hall* [*v. Ledex, Inc.*], 669 F.2d [397, 399 (6th Cir.1982) ]. Rather, courts have concluded, after reviewing the requirements for retroactive application of a decision in light of *Chevron Oil Co. v. Huson*, 404 U.S. 97 [92 S.Ct. 349, 30 L.Ed.2d 296] (1971), *see also Stovell v. Denno*, 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967), that claimants filing a charge containing Title VII claims with the EEOC before June 23, 1980 (the date of the *Mohasco* decision) are entitled to the 300 day rather than the 240 day extended period for the prerequisite filing with the state agency. *Wiltshire*, 652 F.2d at 842.

After reviewing the cases decided under the ADEA and Title VII, this court concludes that grievants in deferral states need not file a charge with a state agency within the state limitations period in order to obtain the benefit of the extended period of filing with the EEOC available in Title VII under 42 U.S.C. § 2000e–5(e). Prior to June 23, 1980, claimants are entitled to the 300 day rather than the 240 day, extended period for filing with the EEOC.

In *Haller v. Butler Shoe Corporation*, 595 F.Supp. 998, 999–910 (D.Md.1984), Judge Northrop reviewed the issue and adopted Judge Miller's position, observing:

In *Soble v. University of Maryland*, 572 F.Supp. 1509 (D.Md.1983), Judge Miller addressed and rejected the exact same argument raised by the defendant herein. In *Soble*, one of the issues was whether "plaintiff's failure to file a charge with Maryland's state agency within the 180-day state limitations period results in the plaintiff being denied the benefits of the extended federal filing period." *Id.*, at 1512. After a thorough analysis of the applicable law, the Court held:

> [T]his court concludes that grievants in deferral states need not file a charge with a state agency within the state limitations period in order to obtain the benefit of the extended period of filing with the EEOC available in Title VII under 42 U.S.C. § 2000e–5(e).

*Id.*, at 1514.

Defendant, aware that the *Soble* decision is directly contrary to its position, argues that *Soble* is inconsistent with other decisions of this District and that *Soble* was wrongly decided. The Court rejects these arguments. First, *Soble* was predicated on the decision rendered in *Mohasco Corp. v. Silver*, 447 U.S. 807 [100 S.Ct. 2486, 65 L.Ed.2d 532] (1980). The decisions reached by this District Court prior to that controlling Supreme Court decision are not persuasive on the issue raised herein. Thus *Soble* is more than just the most recent decision on this issue, it is the only decision that includes *Mohasco* in its analysis.

Second, the Court is not convinced that *Soble* was wrongly decided.... *Soble* provides a better reading of *Mohasco* and is more in line with other decisions that have addressed the issue and rejected the restrictive approach urged by the defendant. *See, e.g., Smith v. Oral Roberts Evangelistic Ass'n, Inc.*, 731 F.2d 684 (10th Cir.1984) [other citations omitted]. Further support for the *Soble* decision can be found in the EEOC's Code of Federal Regulations as revised in 1981 to

conform to the *Mohasco* decision. 29 C.F.R. § 1601.13(a)(3) (1981).[1]

▮ Herein, this Court, fully persuaded by *Soble* and *Haller*, holds that Wright did not need to have filed his charge with MCHR within Maryland's 180-day limitations period in order to benefit from the extended 300-day federal filing period accorded to claimants in deferral states.

▮ Respondent contends that, in any event, Wright's charge was untimely initiated with the EEOC for the additional reason that, since that charge was filed with the EEOC 251 days after the discriminatory act, if the EEOC had then referred it to the MCHR, the EEOC would still have had to wait 60 days to allow for state processing before the EEOC could have considered the claim at the federal level. Thus, argues Respondent, Wright's charge cannot be deemed to have actually been filed with the EEOC prior to 300 days after the alleged discriminatory act. The answer to that position is that the EEOC and the MCHR are parties to a work sharing agreement. Pursuant to that agreement, the MCHR waived its right to "exclusive" processing of charges filed initially with the EEOC, and thereby relieved the EEOC of any need either to wait 60 days for state processing or to wait until state processing had terminated if Wright had, or the EEOC had, as neither in fact did, filed Wright's charge with the MCHR.

Paragraph 4c of the Worksharing Agreement between the EEOC and the MCHR [2] provides in part:

The EEOC will take primary responsibility for processing all charges originally received by EEOC.... In addition, EEOC will process the following charges:

\*    \*    \*    \*    \*    \*

6. All charges covered under Title VII which are received by EEOC beyond six (6) months but before 300 days after the alleged violation.

Paragraph 4d of that Agreement states:

In order to facilitate early resolution of charges, the [MCHR] hereby waives its exclusive rights to specific periods of initial processing which have been granted to the [MCHR] by Title VII for those charges assigned by this Agreement to EEOC for initial processing.[3]

Section 1601.13(c), 29 C.F.R. of the EEOC's Procedural Rules and Regulations, provides:

Pursuant to section 705(g)(1) and section 706(b) of Title VII, the Commission shall endeavor to enter into agreements with 706 Agencies and other fair employment practice agencies to establish effective and integrated resolution procedures. Such agreements may include, but need not be limited to, cooperative arrangements to provide for processing of certain charges by the Commission, rather than by the 706 Agency....

Those same regulations also contain the following:

A 706 Agency may waive its right to the period of exclusive processing of charges provided under section 706(c) of Title VII with respect to any charge or category of charges....

\*    \*    \*    \*    \*    \*

---

**1.** See also *Equal Employment Opportunity Commission v. Pattin-Marion*, 588 F.Supp. 41 (S.D.Ill. 1984), citing, *inter alia* (at 44), to *Soble*.

**2.** The effective date of that agreement is February 10, 1981. *See* Exhibit 2 to Reply Memorandum filed in this case on February 11, 1985, by the EEOC.

**3.** Respondent takes the position that the Worksharing Agreement is null and void because it violates the requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553(b), (c) and (d), which requires that administrative agencies submit proposed rules for publication in the Federal Register in order to give interested parties an opportunity to comment. Assuming *arguendo* only that the regulation calling for the worksharing agreements is of the type covered by the cited sections of the APA, the regulation was, in fact, published in the Federal Register. 30 F.R. 8407 (as amended 46 F.R. 43037). As to the worksharing agreement itself, there is no statutory or case authority suggesting the need for it to have been published in the Federal Register.

Where the document on its face constitutes a charge within a category of charges over which the 706 Agency has waived its rights to the period of exclusive processing ... the charge is deemed to be filed with the Commission upon receipt of the document. Such filing is timely if the charge is received within 300 days·from the date of the alleged violation.

"[T]he 'administrative interpretation of [Title VII] by the enforcing agency is entitled to great deference.' " *Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971); *quoted in Doski v. Goldseker Co.,* 539 F.2d 1326, 1332 (4th Cir.1976). In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 64, n. 4, 100 S.Ct. 2024, 2031, n. 4, 64 L.Ed.2d 723 (1980), Justice Blackmun, noting provisions of Title VII which "evidence the policy of promotiong federal-state cooperation in enforcement," quoted specifically, *inter alia,* Title VII's authorization to the EEOC "to enter into worksharing agreements with those [State and local] agencies [charged with administering fair employment practice laws of the state] to facilitate the processing of complaints." In *Thompson v. International Association of Machinists and Aerospace Workers,* 580 F.Supp. 662, 665–66 (D.D.C.1984). Judge Green wrote that:

[I]n the District of Columbia the EEOC's deferral function is altered considerably by a worksharing agreement between the EEOC and OHR. The terms of that agreement provide that each agency will take primary responsibility for processing all charges of which it is the original recipient ... and, "to facilitate the early resolution of charges," the OHR has "waived its exclusive rights to specific

periods of initial processing" granted by Title VII for charges assigned by the agreement to EEOC for initial processing....

\*     \*     \*     \*     \*     \*

In effect, by entering the worksharing agreement with EEOC, OHR [the Office of Human Rights of the District of Columbia] is deemed to have "terminated" its review function within the meaning of § 2000e–5(c).[4]

■ Finally, Respondent urges that if the worksharing agreement between the EEOC and the MCHR is valid, there is no need in this case, in which Wright filed only with the EEOC and not with the MCHR, to give effect to the 300-day period provided for in Section 706(e). Respondent contends that Maryland is not a deferral state with regard to such a charge since the EEOC did not need to wait for the MCHR to act. Defendant's said approach finds support in *Douglas v. Red Carpet Corporation of America,* 538 F.Supp. 1135, 1138–39 (E.D.Pa.1982) and *Klausner v. Southern Oil Company of New York, Inc.,* 533 F.Supp. 1335, 1338–39 (N.D.N.Y.1982) but is seemingly rejected in *Yeung v. Lockheed Missiles & Space Co.,* 24 F.E.P. Cases 1070 (N.D.Cal.1980) and is not consistent with the result or the reasoning in *Soble.* Defendant's said approach also is in conflict with *Haller.* In the absence of any opinion of the Fourth Circuit indicating the views of that Court, this Court, finding *Soble* and *Haller* to be convincing, is not prepared to follow *Douglas* and *Klausner.* Rather, the view which this Court believes is correct is a simple one which laymen, unaided by attorneys, can rely upon in Title VII cases when instituting a case in a federal court, *i.e.,* that in a deferral state with a worksharing agreement of the type in

---

**4.** *See also Gunn v. Dow Chemical,* 522 F.Supp. 1172 (S.D.Ind.1981) (state proceedings terminated where state agency waived its right to exclusive opportunity to resolve charge in worksharing agreement with EEOC); *Morgan v. Sharon Pennsylvania Board of Education,* 445 F.Supp. 142 (W.D.Pa.1978); *Steissberger v. Rockwell In-*

*ternational Corp.,* 29 F.E.P. Cases 1273 (E.D. Wash.1982); *Yeung v. Lockheed Missiles & Space Co.,* 504 F.Supp. 422 (N.D.Cal.1980) (all holding that state agencies' waivers in worksharing agreements with the EEOC are equivalent to termination of state proceedings.)

existence between the EEOC and the MCHR, the complainant can timely file the federal court action if he does so within 300 days of the alleged discriminatory discharge.[5]

In sum, this Court holds that since Wright filed his complaint with the EEOC within 300 days after the alleged discrimi-

natory conduct occurred, Wright's complaint was timely filed.[6]

5. In *Lopez v. Sears, Roebuck and Company*, 493 F.Supp. 801 (D.Md.1980), Judge Miller held that because of the Work Sharing Agreement then in effect between the EEOC and the MCHRC (706 Agency), the filing of the claimant's charge with the EEOC 212 days after the allegedly discriminatory discharge did not trigger the application of the extended 300-day filing period. In so holding, Judge Miller wrote:

> Under the terms of the Work Sharing Agreement, the MCHRC [Montgomery County Humans Relations Commission] would not act on the charge until the EEOC had 'resolved' the matter. In these circumstances, the plaintiff's charge was submitted to the MCHRC for informational purposes, with no contemplation on the part of the agencies that the MCHRC would process the plaintiff's case. Accordingly, the charges were never actually 'instituted' with the MCHRC, within the meaning of § 2000e–5(e), since there was no filing with an intent that the MCHRC would process the charge. Thus, the 180-day filing period is applicable in this case.

*Id.* at 805.

By way of contrast, in the within case, the Work Sharing Agreement between the MCHR and the EEOC during the time period relevant to this case by its own terms stated specifically that the EEOC would process "all charges covered under Title VII which are received by EEOC beyond six months but before 300 days after the alleged violation." *See supra* at 1140. Thus, the agreement itself contemplates that *any* charge filed with the EEOC prior to 300 days is valid and timely. The Work Sharing Agreement in *Lopez*, on the other hand, made no reference to the 300-day time limitation; the only relevant passage of the agreement in *Lopez* (copy thereof has been placed in court file in this case) states simply that "[the state agency] hereby waives its exclusive right to process [the charges for which the EEOC would take primary responsibility] for 60 days, as provided in Section 706(c) of Title VII of the Civil Rights Act of 1964, as amended, so that [the] EEOC can take immediate action on such charges." The agreement does not suggest that any charge filed within 300 days is necessarily timely.

In addition, Section 1601.13, 29 C.F.R., cited *supra*, provides that when a state agency "has waived its rights to the period of exclusive processing ... the charge is deemed to be ... timely if the charge is received [by the EEOC]

within 300 days from the date of the alleged violation." That regulation was not issued by the EEOC until October 1, 1981. The *Lopez* case was decided in May, 1980, when no such language was included in Section 1601.13 of the EEOC regulations then in effect. 29 C.F.R. 1601.13(d)(2)(iii) simply provided at that time that:

> Where the document is submitted to the Commission more than 180 days from the date of the alleged violation but within 300 days and within the period of limitation of the appropriate 706 agency, the Commission shall process the document in accordance with paragraph (d)(1) of this section and shall assume jurisdiction 60 ... days after the 706 agency proceedings have been commenced, except that where the Commission is earlier notified of the termination of the State proceedings, it shall immediately assume jurisdiction upon receipt of such notice.

By way of contrast with the situation in *Lopez*, the current EEOC regulations and the specific provisions of the Work Sharing Agreement in effect in the instant case indicate that the filing of Wright's charge with the EEOC 251 days after the allegedly discriminatory discharge triggers the application of the extended 300-day filing period, thus rendering Wright's charge valid and timely.

6. The EEOC contends that because Wright completed the EEOC's Section 706(e) "Intake Questionnaire" within 219 days of Wright's discharge, his charge was timely even if the EEOC had been compelled to wait out the 60-day referral period before deeming the charge "filed" under Section 706(e). That alternate contention need not be reached herein. However, it is noted that the EEOC did not, in fact, ever refer either Wright's formal charge or the Intake Questionnaire which Wright completed to the MCHR. Accordingly, the question arises as to whether, if the worksharing agreement does not waive deferral by the EEOC to await state processing, the formal charge or the Intake Questionnaire constitutes a valid charge. Because this Court holds herein that the waiver provided by the worksharing agreement eliminates the need for the EEOC to await the passage of 60 days, there is no need in this case to reach the EEOC's contention regarding the Intake Questionnaire.